93 So.2d 120 (1956)
SOUTHERN ATTRACTIONS, Inc., a Florida corporation, Petitioner,
v.
Art C. GRAU, Respondent (two cases).
Supreme Court of Florida. Special Division A.
December 19, 1956.
Rehearing Denied March 26, 1957.
*121 Cobb & Cole, Daytona Beach, for petitioner.
Millard B. Conklin, Daytona Beach, for respondent.
O'CONNELL, Justice.
Grau, respondent and cross petitioner, was plaintiff in the court below and Southern Attractions, petitioner here and cross-respondent, was defendant below; they will be referred to as they were below.
On April 5, 1956, Art C. Grau filed a claim of lien upon all the personal property of Southern Attractions, Inc. located on its premises in South Daytona, known as the "Sea Zoo", a marine tourist attraction. The lien was for $15,500 "or more". Subsequently, plaintiff filed, on the chancery side of the circuit court, a petition for enforcement of lien. Thereafter the defendant was served with a notice to show cause, within five days from the date of service, why such claim should not be paid. The defendant in response to the notice to show cause filed its affidavit of defense, signed by its counsel, and also filed and served upon plaintiff motion to quash, motion to dismiss, and motion to strike.
Count One of the petition alleged that plaintiff had been employed by defendant under a contract whereby he was to serve as a "promotion and advertising manager and as general manager of defendant's enterprises" for five years at a salary of $10,000 annually, $6,000 of which was to be paid per year in cash and the balance of $4,000 in either cash or common stock. In addition, he was to receive either 3% of all gross receipts from the operation of the Sea Zoo or 25% of the net profits, whichever was the greater. Plaintiff contended that the $6,000 in cash per year had been paid but he had not received the balance of $4,000 per year in cash or stock nor any additional amount from gross receipts or net profits, as provided. He alleged that he was hired on May 15, 1953 and fired March 2, 1956, that he had fully performed his part of the contract and was entitled to the amounts claimed, and that he was entitled to a lien under the provisions of Section 85.09, Fla. Stats. 1955, F.S.A., and that he was also entitled to the use of the summary proceedings provided for in Chapter 86, Fla. Stats. 1955, F.S.A., for the enforcement of such statutory liens. Count One asked the court to enter its decree in favor of Grau for the sum of $11,155.33, such being the amount due plaintiff as the balance of annual salary and wages due him for his services for two years and nine and one half months which he claims to have worked under his said contract of employment; the count also asked the court to order an accounting so that the gross receipts or net profits could be determined. Count Two realleged all matters of Count One, expressed plaintiff's doubt as to his rights under the contract, *122 asked for additional lien against the property of defendant for amounts due and to become due for the life of said contract, and asked the court to construe the terms and provisions of the contract, determine the validity thereof, and, in the event it determined the contract to be valid and binding, to determine then what amounts were and would be payable to the plaintiff up until date of the petition and in the future. The court denied the motion to quash, motion to dismiss and motion to strike Count One of the petition and then made the following statement:
"The Court further being of the opinion that Count Two (2) of the Petition for Enforcement of Lien (this Count seeks to [e]nvoke the equitable jurisdiction of the Court upon Chapter 87 Florida Statutes of 1955 [F.S.A.]  the Declaratory Decree Chapter) does not properly come within the provisions of said Chapter, it is
Ordered, Adjudged and Decreed that the Defendant's Motion to Dismiss Count Two (2) of said Petition for Enforcement of Lien is granted, and said Count Two (2) is hereby dismissed."
The court further denied motions of plaintiff to strike the affidavit of defense, motion to quash, motion to dismiss and motion to strike and for entry of a default judgment and for summary judgment; it ordered the parties to prepare for pre-trial conference.
Defendant filed with this Court its petition for writ of certiorari, contending that Count One should have also been dismissed. Plaintiff filed a cross-petition for certiorari contending neither count should have been dismissed.
Defendant questions the propriety of plaintiff's using Secs. 85.09 and 86.06, Fla. Stats. 1955, F.S.A., in a contract claim and filing of the action in Chancery rather than Law.
Sec. 85.09 provides that liens prior in dignity to all others accruing thereafter shall exist:
"In favor of persons performing labor or services for any other person, upon the personal property of the latter upon which the labor or services is performed, or which is used in the business, occupation, or employment in which the labor or services is performed."
Defendant claims that the statute is provided for those who need its help in getting back wages and that therefore it is designed for laborers and not for those in managerial positions. It contends that the cases in this jurisdiction have indicated that the proper interpretation of the statute is that the labor of services must be performed upon the personal property or be performed so closely in connection with such labor on the property that it could be considered as such labor, citing the following: Florida Travertine Corp. v. Staples, 1933, 112 Fla. 344, 150 So. 599, Griffith v. Hulion, 1925, 90 Fla. 582, 107 So. 354, and Flynn-Harris-Bullard Co. v. Johnson, 1925, 90 Fla. 654, 107 So. 358. In the Travertine case a lien was allowed for a superintendent for his services, such lien being upon the "personal property used in the business in connection with which plaintiff has been employed and served as superintendent, for which service plaintiff's salary has remained unpaid". [112 Fla. 344, 150 So. 600.] In the instant case the lien, under Count One of the petition, is sought for the balance of salary. The fact that such balance was to be paid in stock does not alter the principle, even in view of the fact that additional amounts were claimed from gross receipts or profits.
In the Griffith case, supra, a woods rider was concerned. The Court said it having been shown by the evidence the services pertained to the production of the personal property subject to the lien and such services were so closely connected therewith, the services were as contemplated by the *123 statute. And in the Flynn-Harris-Bullard case, supra, the Court implied the lien applies for services or labor on personal property upon which they performed labor or services. But in Palm Beach Bank & Trust Co. v. Lainhart, 1922, 84 Fla. 662, 95 So. 122, it was held that the supervising of the erection of a building and the selection of materials to be placed therein was such labor as the statute contemplated. The statute referred to in that case was Section 3496, Revised General Statutes of Florida, 1920. It provided a lien should exist:
"For labor on buildings and structures.  In favor of any mechanic, laborer or other person who shall perform by himself or others any labor upon, or in the construction or repair of any building or other work or structure, or additions to or upon any fixtures therein or thereon; upon such buildings, work or structure and the land upon which it stands."
In the instant case the plaintiff was hired not only as a promotion manager but as manager of the operations of the Sea Zoo. We cannot see how such managerial duties performed by plaintiff can be distinguished from those of the Travertine and Palm Beach Bank cases, supra. In each of those cases supervisory duties were involved. It is quite true that the duties of plaintiff did not call for labor or services on the personal property of defendant and were perhaps not as closely connected with the production of personal property as in the Flynn-Harris-Bullard case, supra. But the wording of the statute in question seems to be devoid of any ambiguity. It does not state that the labor must be done on the property. It does say a lien applies for those performing labor or services for others and that such lien can apply either to the personal property on which such labor or services was performed or the lien may apply to personal property in the business in which such labor or services was performed. It might well be that at common law no such lien would apply and that hence our statute is in derogation of the common law and subject to strict interpretation. 53 C.J.S., Liens, § 9, p. 854 states that at common law the debt must have been incurred for some services or work performed by the claimant on the property against which the lien is asserted. However, even giving a very strict construction to the statute it appears that a clear intent was expressed that a lien shall exist in such a situation as found in the instant case.
Having established that under the provisions of Sec. 85.09, Fla.Stats. 1955, F.S.A., a lien does exist on the personal property of a business in which one performs managerial duties, it is next necessary to determine whether the claimant in the present case proceeded properly in the enforcement of such lien.
Chapter 86, Fla.Stats. 1955, F.S.A., provides various ways of enforcing "all liens provided for by the foregoing chapters". If a lien attaches under Chapter 85 then it naturally follows that it may be enforced as a matter of right under Chapter 86.
While the record does not reveal that the claimant, in the petition to enforce his lien, specifically stated he was proceeding under the terms of F.S. § 86.06, F.S.A., it is apparent he was so proceeding, because he asked in his petition that Southern Attractions, Inc. "show cause, before this Court, within five (5) days, as provided by statute, why petitioner's said claim and claim of lien should not be paid or enforced." No other section of Chapter 86 provides that cause be shown within 5 days. Consequently, it follows claimant, upon stating "as provided by statute" was referring to F.S. § 86.06, F.S.A. The record does reveal that the petition was filed in the circuit court sitting in chancery.
The defendant argues that the plaintiff erred in bringing his complaint on the *124 equity side of the court primarily because it involved a complicated contract matter and called for a jury trial of factual issues. It objects to the use of Sec. 86.06 to enforce the alleged lien in that such summary procedure was simply not designed to handle the complicated matter of this type controversy. A chancellor, says the defendant, has no way to empanel a jury and Section 86.06(5) calls for the summoning of a jury.
Statutes creating liens usually provide the manner in which they are to be enforced and some jurisdictions say that if such is the case a court of equity has no jurisdiction to enforce the lien. But on the other hand some cases hold a lien can be enforced in equity unless the legislature in the statute impliedly excluded the right to proceed in equity. 33 Am.Jur., Liens, Sec. 44. Where the statute creates a lien but no adequate or exclusive remedy is provided for, enforcement in equity may generally be resorted to. Milton v. City of Marianna, 1932, 107 Fla. 251, 144 So. 400. Foreclosure of Liens is a matter of equitable cognizance within the jurisdiction of the circuit courts under art. 5, Sec. 11, Fla. Constitution, F.S.A. Brickell v. Palbicke, 1936, 123 Fla. 508, 167 So. 44. In the section by which the claimant seeks to enforce his lien there is no actual designation as to on which side of the court the petition must be filed. There is, however, sufficient language present which implies the action should be at law and not in equity. The first sentence of the section reads as follows:
"By any person claiming a lien for labor performed, his legal representative, agent or assign making or filing in the court having jurisdiction of the amount of the lien claimed * * *." (Emphasis added.)
Jurisdiction based on amount of claims involved exists in courts of law, not in equity. Also, the section calls for a jury trial if desired. And in sub-section seven (7) we find:
"Upon the entry of a judgment, as hereinbefore provided, the petitioner may sue out his writ of execution, as in the case of other executions on judgments of suits at law." (Emphasis added.)
This question was dealt with somewhat in the case of McCluskey v. Klock, 1948, 160 Fla. 537, 35 So.2d 646, where petitioner secured a rule to show cause why the party claiming a lien should not be compelled to enforce his claim of lien. The chancellor ordered claimant to commence a foreclosure suit or have the claim cancelled. Claimant did not institute an action for foreclosure but instead proceeded under F.S. § 86.06, F.S.A. This Court held it might have been appropriate, since he was already in a court of equity, to file foreclosure proceedings, but he was given by law the right to proceed under Sec. 86.06 and the chancellor's order did not specify he must proceed in equity (and that, furthermore, it was doubtful that the chancellor could have properly governed the forum for enforcement proceedings). From a reading of this case it becomes apparent that the law side of the court is the proper forum for proceedings under F.S. § 86.06, F.S.A.
The plaintiff next complains that the affidavit of defense was invalid in that it was signed by the counsel for defendant rather than defendant himself as he contends is called for in the statute, Sec. 86.06(2). This section allows defendant to move to quash or file an affidavit denying the facts. It provides that such affidavit shall be filed by the person against whom such lien is claimed or any other person claiming an interest in the property. In the instant case the defendant filed both a motion to quash and an affidavit of defense.
The statute in question does not say the party must file an affidavit signed by himself. Nor do we believe that the statute requires him to do so. Plaintiff cites Beverette v. Graham, 1931, 101 Fla. *125 563, 132 So. 826, as authority for the statement if the rule or statute requires verification to be by the party in person, no one else may make it. This case has never been cited since its writing on this point until now and cites as its authority for such statement no previous Florida cases. The verification there referred to was to a pleading which was necessary to invoke the jurisdiction of the court. In 2 C.J.S., Affidavits, § 6 it is said that under a statute requiring an affidavit to be made by a particular person himself, his agent or attorney cannot make it, but if the statute is silent as to who can make it, the attorney can. An attorney may make an affidavit for a party if he knows the facts. And it is within the discretion of the court to receive the affidavit of an agent or attorney in situations where a different construction of the statute might defeat the ends of justice. 1 Am.Jur., Affidavits, Sec. 5.
The next contention of the plaintiff is that if the affidavit of defense was invalid, the only thing left was the motion to quash and since the court overruled that he should have immediately received judgment, as in default. Sec. 86.06(4), Fla. Stats. 1955, F.S.A. He also contends that even if the affidavit be considered valid, it did not deny the facts as required by the statute. On the contrary, we find that defendant specifically denied performance on the part of the plaintiff. 30 F.S.A. Fla.R.Civ.P. 1.36(e) requires that the affiant have personal knowledge. In his acknowledgement before a notary the attorney making the affidavit for defendant said it was of his own knowledge. Consequently, although the motion to quash was overruled, there still remained a valid affidavit of defense and the cause should properly proceed on to a trial of the facts. It necessarily follows that plaintiff should have been denied his motion for summary judgment. The question of performance on the part of plaintiff is at issue.
The plaintiff filed his cross-petition for certiorari contending that his second count should not have been dismissed and that the first count should not be dismissed. The second count asked for a declaratory decree and also concerned wages which would have been earned in the future, had the contract not been cancelled. Petitioner has no right, in a proceeding for the enforcement of a lien, to claim a lien for future damages for breach of contract (wages which would have been earned had the contract not been breached). We do not think Sec. 85.09 can be construed to give one a lien for services not yet performed. Nor does Sec. 86.06 provide a remedy for enforcement of such a claim.
Plaintiff maintains that his petition for a declaratory decree met the requirements of Chapter 87 and that he could ask for such under the provisions of Ch. 87. Defendant points out that the order of the trial court does not deprive plaintiff of his right to seek a declaratory decree, but merely says it could not be under Chapter 86. Plaintiff still has the right to bring a separate suit asking for his declaratory decree, if he can bring himself within the provisions of that Chapter. However, see Palmer v. Edwards, Fla. 1951, 51 So.2d 495, where the Court said that the party was convinced he had a claim so it was superfluous for him to seek a declaratory decree.
Nevertheless, we do not now rule on whether a bill for a declaratory decree will stand but do uphold the lower court's dismissal of the second count of plaintiff's petition on the ground he could not properly seek such relief under the provisions of F.S. Chapter 86, F.S.A.
The last contention of the plaintiff is that the defendant's appeal was premature, because the order attacked is not a final order. It is to be remembered that plaintiff argues that his action is properly on the equity side of the court. But now he contends that the trial court denied to take equitable jurisdiction on either count and that therefore the defendant cannot appeal *126 this interlocutory order but can only appeal a final judgment, as 31 F.S.A. Fla. Supreme Ct. Rule 14 does not apply to interlocutory orders in law. Saffran v. Adler, 1943, 152 Fla. 405, 12 So.2d 124. But in this case the lower court was sitting in chancery and did not transfer the case to the law side of the court. Consequently, the order sought to be reviewed was an interlocutory order in equity and is properly the subject of a review by a writ in the nature of certiorari. Fla.Supreme Ct. Rule 14.
Accordingly we hold that the chancellor committed no error in dismissing the Count Two of the petition for enforcement of lien and that he was not in error in refusing to strike or quash Count One thereof. We also hold that the petition was filed on the wrong side of the court and that upon motion in the lower court made by the plaintiff within 30 days of the entry of the mandate of this Court that this cause shall be transferred to the law side of the court, otherwise the cause shall stand dismissed.
The petition for writ of certiorari is granted in part and the cross petition is denied, with directions that further proceedings be had herein consistent with this opinion.
HOBSON, Acting C.J., and SEBRING and THORNAL, JJ., concur.