RUSLAINE HOMES, A NEW JERSEY CORPORATION, PLAIN-
TIFF, v. MARION D. GUEST AND PATRICIA A. HAFER,
JOHN SCARPA AND CHELSEA TITLE AND GUARANTY
COMPANY, A NEW JERSEY CORPORATION, JOINTLY,
SEVERALLY AND IN THE ALTERNATIVE, DEFEND-
ANTS.

Cape May County Court,
Law Division

Decided April 13, 1973.

*Mr. Norman Zlotnick* for plaintiff (*Messrs. Perskie and Callinan,* attorneys).

*Mr. Vincent Lamanna* for defendants Marion D. Guest and Patricia A. Hafer (*Messrs. Rubins and Lamanna,* attorneys).

*Mr. Robert Butler* for defendant John Scarpa (*Messrs. Tuso and Gruccio,* attorneys).

STALLER, J. C. C. The defendants have moved to set aside, and to have declared invalid, the lien claim filed by the plaintiff corporation under the provisions of *N. J. S. A.* 2A:44–75.

The defendants negotiated with the plaintiff, a builder, for the construction of two duplex homes. As a result of the negotiations, an agreement was entered into on April 16, 1972, between the defendants, designated as owners of the lands upon which the structures were to be erected, and the plaintiff, as building contractor. Thereafter on May 23, 1972, a further contract was executed by the defendants, designated as owners, and the building contractor. The difference between the two contracts was the completion date, the position of the structure on the land and the amount of consideration, it having been reduced by $600 in the second agreement. In both contracts, it was provided that the contract was to be "recorded" in the office of the Clerk of Cape May County prior to the commencement of any work being done. Both contracts, with specifications, were filed in the Clerk's office on May 26, 1972; and the builder then commenced to build, continuing to work thru the next sev-

eral weeks and months until August 2, 1972. Then on August 17, 1972, building contractor filed the lien claim, sought herein to be set aside.

Although the agreement executed by the defendants referred to them throughout as owners, the title had not, at that time, been conveyed. The defendants had an agreement to purchase the lands from one Scarpa; and settlement was had under that agreement of sale of the lands on June 10, 1972, at which time title was conveyed to them just 18 days after the date of the second agreement and 15 days after the date of filing.

During the time of construction, plaintiff paid subcontractors out of funds either received on account from the defendants or out of funds which plaintiff borrowed to meet payments to such subcontractors, who looked to the contractor because of the filed contract.

Defendants contend that the lien claim is invalid, not by reason of any improper procedure in its filing or suit thereon but because, at the time the contract was signed and filed, the defendants were not the *record owners* of the land as required by the statute; and this defect in the filed contract renders the subsequent filing of the lien claim nugatory.

The Mechanics Lien Act with respect to the filing of building contracts at *N. J. S. A.* 2A:44–75 sets forth.

If a building is erected, constructed, completed, altered, repaired, or added to in whole or in part under a written contract, *signed by the record owner* of the estate or interest in the land which is to be charged with a lien under this article, the building and the land on which it stands shall, to the extent of the estate or interest so charged, be liable to the lien of the *contractor alone* for labor performed or materials furnished pursuant to the contract, if the contract or a duplicate thereof, together with the specifications accompanying the contract or a copy or copies thereof, are, before the labor is performed or materials furnished, filed with the proper county clerk. The plans need not be filed, whether or not referred to in the contract. The filing of such contract shall be in lieu of filing a mechanics notice of intention under this article. [Emphasis added]

The defendants rely solely upon *Woodbridge Lumber Co.
v. Varacska,* et al., and *Nielsen v. Varacska,* et al., a de-
cision of Circuit Court of New Jersey for Middlesex County
in 1937, reported in 194 *A.* 392. Here the plaintiffs, appar-
ently materialmen or mechanics or both, brought suit upon
a lien claim against William and Julia Varacska as owners,
and against the builder, who filed no answer; and judgment
was taken against him by default. The owners Varacska
answered that the contract had been filed and therefore the
plaintiffs could not assert a lien claim against them. The
plaintiffs moved to strike that portion of the answer on the
ground that the filing of the contract was ineffectual to pro-
tect the premises against mechanics lien claims because it
was not signed by the record owner. It had been signed by
William Varacska but not by his wife, Julia. The court re-
fused to strike the Varacska answers, in effect holding that
the contract though signed by only one of the record owners
was indeed effectual to bar the plaintiffs; and the material-
men must look to the contractor, the Varacska's lands being
free from claims of all others.

The holding in *Woodbridge Lumber Co.* does not support
the contention asserted by defendants here. However the
language of that decision is most significant to a considera-
tion of the construction of the statute and its applicability
to the case sub judice.

It is to be remembered that what defendants are seeking
here is to vacate from their lands a contractors' lien for con-
struction costs of buildings erected for their benefit. There
are no materialmen, laborers or subcontractors asserting
claims against the defendants. The only claim sought to be
asserted is that of the contractor alone. The defendants seek
to remove the very protection the Mechanics Lien Act was
designed to afford by claiming that, although they were
equitable owners of the land, they had not yet become the
record owners when they signed the contracts which the con-
tractor filed.

In *Woodbridge,* the court refused to burden the owners with having to pay the builder under the contract and again having to pay the materialmen for the same thing. In effect the Varacskas were protected from paying twice. Here the defendants ask this court to help them avoid a charge on their lands to compel them to pay even once. This, on the bare contention that the strict language of the statute gives them the right to avoid obligating their lands for the payment of a debt which may be due to the plaintiff.

The purpose of the statute, as set forth in *Woodbridge,* at 394 is "to secure to persons furnishing labor or materials for use in the construction of a building payment for such labor and materials . . . . it [is] also the purpose of the statute to provide a means by which owners might have a building erected for them without subjecting the land and building to a lien in favor of a person or persons to them unknown involving amounts over which the owner would have no control".

The intention of the Legislature in enacting such a statute requiring signature by the record owner was explored by the Court in *Woodbridge Lumber.* It found that the statute had been enacted to eliminate conditions theretofore existing wherein courts had held that where a contract was filed, it did not necessarily need to be a contract with the owner, and it was therefore impossible for a *materialman* or *laborer* to know who the owner was without examining the record of the title. In such instances, where a construction contract was entered into by someone who had no connection with the owner, or, at best, was acting for an undisclosed principal, *materialmen and laborers* were unable to serve stop notices upon the owners but had to rely on the financial responsibilty of the person making the contract. Where such person was in fact the owner, the materialman was given some security for his payment because if the owner disregarded the stop notice, proceedings could then be taken against the owner to obtain judgment and levy against his land. Thus, the court reasoned at 395, that since the *one*

*purpose* of the statute was to secure payment to material-man, it was reasonable to require that land should *not* be exempt from a lien unless the owner was the one who signed the contract with the builder.

 While it is true that the provisions of statutory lien should as a general principle be strictly construed, *Key Agency v. Continental Casualty Co.,* 55 *N. J. Super.* 58, 63 (Ch. Div. 1959), affd. 31 *N. J.* 98, the provisions for enforcement of the lien thereby created are to be liberally construed to effectuate the remedial statutory policy of providing priority of payment of the price or value of the work performed or materials furnished in the erection or repair of a building. *Friedman v. Stein,* 4 *N. J.* 34–40 (1950); *J. T. Evans Co. v. Fanelli,* 59 *N. J. Super.* 19, 23 (Law Div. 1960); see *Morris County Industrial Park v. Thomas Nicol Co.,* 35 *N. J.* 522, 526 (1961).

As was stated in *American Homes v. Krantz,* 131 *N. J. Eq.* 213, 213–215 (Ch. 1942).

The objective of the statute is to give notice to persons other than the original contractor, who may be about to furnish material or labor for the construction of the building, that they cannot rely upon a lien for their payment.

And in *J. R. Christ Construction Co. v. Willetex Associates,* 47 *N. J.* 473, 478 (1966), the court stated.

Mechanics lien statutes are remedial and are designed to guarantee effective security to those who furnish labor or materials used to enhance the value of property of others, and, where the terms of the statute reasonably permit, the law should be construed to effect this remedial purpose.

 It is obvious that the design and objective of the Mechanics Lien Act is to protect the materialman and laborer and, under *N. J. S. A.* 2A:44–75, the contractor as well. To permit the defendants to vacate the contractors' lien on their lands would be to thwart that design and objective. The defendants hold no predominant position, as against the con-

tractor who constructed buildings on their land, to set aside that contractor's claim on the mere technicality that at the time they signed the building contract, which was then filed in good faith, they were not then the owners, but became the owners some two or three weeks later.

■ Moreover, even though the defendants were not record owners at the time they executed the contract and became owners a few weeks after the contract was filed, they could not prevail in any event to set aside the lien claim here. *N. J. S. A.* 2A:44–75 and its predecessors has been interpreted in numerous decisions to be applicable when the lien is filed. Where property is conveyed between the time of making the contract and the time of filing the contractors' lien, the person or persons holding title when the lien is filed, are the proper ones to be made parties. *Derrickson v. Edwards,* 29 *N. J. L.* 468, 472–73 (E. & A. 1861); *Robins v. Bunn and Barber, et al.,* 34 *N. J. L.* 322, 324 (Sup. Ct. 1870); *Jacobus v Mutual Benefit Life Insurance Co.,* 27 *N. J. Eq.* 604, 627 (E. & A. 1876); *Essex Sash and Door Co. v. Murphy,* 11 *N. J. Misc.* 92, 94 (Hudson Cty. Ct. 1933). See *Edwards v. Derrickson,* 28 *N. J. L.* 39, 78 (Sup. Ct. 1859). Cf. *Macintosh v. Thurston,* 25 *N. J. Eq.* 242, 247–248 (Ch. 1874); *Clark v. Butler,* 32 *N. J. Eq.* 664, 667 (Ch. 1880); *Stewart Contracting Co. v. Trenton,* 71 *N. J. L.* 568, 573 (E. & A. 1905). For example, the Court of Errors and Appeals said, in *Jacobus v. Mutual Benefit Life Insurance Co., supra,* at 627:

. . . the owner who is to be made defendant to suits under our Lien Law, is he who stands in that relation, not when the building begins, but when the lein claim is filed, when first a record is made to which subsequent proceedings to enforce the claim must conform, and after which they may be said to be lis pendens.

The *now owners,* the defendants herein, are proper parties to this action against whom the lien claim may be enforced.

Here, where the defendants signed the construction contract as owners of record; where they subsequently became

owners of record; where the lien claim on the construction agreed upon in the contract was filed after the defendants had become record owners; where the construction was continued after defendants had become owners of record, with their acquiescence to the continued construction which benefitted their property, the lien claim will not be set aside.

Motion denied. Submit order.