## CIRCUIT COURT OF FAIRFAX COUNTY

Eric R. Smith et al.

v.

Marshall A. Ramsey, Jr., et al.

April 11, 1988

Case No. (Law) 72881

By JUDGE THOMAS A. FORTKORT

Eric R. Smith is a seven year old child, born July 28, 1980. On January 6, 1983, Eric and his sister were walking to a neighborhood store along the access road adjacent to Route 50 near its intersection with Annandale Road. Route 50 is a four land divided high speed commuter artery upgraded in the 50's. It is a dangerous road by any standard. Eric's sister, who was nine at the time, was holding Eric's hand when he suddenly darted into the access road pulling his sister with him. A truck driven by Marshall A. Ramsey, Jr., struck both Eric and his sister. Eric received severe and permanent injuries and his sister was only slightly injured. Mr. Ramsey never saw either child and stopped only because he felt the truck strike something. The accident was investigated by the police but no charges were ever made against Mr. Ramsey.

Eric was first treated at Fairfax Hospital and within hours was transferred to Children's Hospital in the District of Columbia. After five to six weeks of treatment at Children's Hospital, Eric was transferred to the University of Virginia Hospital where he remained for several months.

Eric currently is physically and mentally handicapped. The left side of his body was paralyzed in the accident. Now $7\frac{1}{2}$ years, Eric has only recently learned to talk. He is developmentally at the $3\frac{1}{2}$ year level and can walk only

with the aid of a walker and braces. His rehabilitation will be long term.

Eric's mother died in a motor vehicle accident in September, 1983. He is being cared for by his grandparents. His grandmother, age 49, is the primary care taker.

On January 17, 1983, Eric's mother engaged the firm of Dolan, Treanor and Murray, now Venable, Baetjer and Howard, to represent her son. Mrs. Smith and the law firm entered into a standard one-third contingency fee agreement.

Marshall A. Ramsey, Jr., the driver of the truck is insured in the amount of $100,000 with the Traveler's Insurance Company. On May 4, 1984, the University of Virginia Hospital made a claim against any settlement on behalf of Eric Ray Smith in the amount of $41,995.96.

The Medicaid Program made a lien claim on January 24, 1984, in the amount of $11,947.13.

Counsel for Eric asked both the University Of Virginia Hospital and the Commonwealth to waive their liens. The Commonwealth agreed to waive one-third of its lien. The hospital refused to waive its lien.

At the request of Counsel, Children's Hospital agreed to waive its lien for $66,017.88. The Insurance carrier has expressed its willingness to extend the policy limit of $100,000 as settlement of the legal controversy provided all parties agree not to pursue liens or file suit against Mr. Ramsey.

Petitioner filed suit on February 19, 1986, originally naming as party defendants in addition to Mr. Ramsey, the Commonwealth of Virginia, the Department of Medical Assistance Services, the University of Virginia Hospital and the Comptroller. The four state entities filed a Plea of Sovereign Immunity and a Demurrer. The demurrer and plea of sovereign immunity was heard on March 28, 1986, and by written order of the Honorable Quinlan H. Hancock, the demurrer was sustained on September 9, 1986.

While the order contains the following language:

> and it further appearing that the provisions of § 8.01-66.9 are inapplicable inasmuch as the first acceptable offer to plaintiff's counsel has arisen well before 72 hours prior to the date of trial . . .

which indicates that the Plaintiff's counsel has received an offer acceptable to him, there is nothing in the record to suggest such a conclusion. Plaintiff denied that he has received an offer acceptable to him and among the grounds for the demurrer cited by the Attorney General is the recitation that this Court has no power to act *unless* the first acceptable offer of settlement is made within seventy-two hours of a scheduled trial date. Since no trial date existed at the time of the demurrer, the sustaining of the demurrer against the state defendants is a logical result.

At any rate, the plaintiff came forward on the trial date, this 16th day of February, 1988, and averred that he had not yet received an acceptable offer of settlement and asked the court to invoke the provisions of section 8.01-66.9 by reducing the two liens in favor of the Commonwealth to zero.

The Attorney General argues that because a settlement has been offered by the insurance company to the full extent of its policy, that an offer acceptable to plaintiff's attorney has been made and that Judge Hancock has already found an offer acceptable to the attorney has been made. The latter argument can be disposed of quickly. The issue posed is a fact issue and could not be raised by demurrer. The recitation in the order is jurisdictional, *i.e.*, the court's jurisdiction over the waiver process does not occur until seventy-two hours prior to a court date and even then the Commonwealth or any entity thereof holding a lien may not be a necessary party at that time.

The question as to whether or not counsel has received an offer acceptable to him revolves around the interpretation of Section 8.01-66.9. Counsel for the Plaintiff claims he cannot make any representation concerning acceptance or rejection of the carrier's offer unless the Commonwealth's liens are reduced. The carrier's offer is conditioned upon the release of Mr. Ramsey from the Commonwealth liens and any other liability. The latest offer to reduce the liens amounts to 60% of the Medicaid lien. (The Commonwealth could only lien two-thirds of its claim and one-third must be reserved to the attorney for his fee under section 8.01-66.3 of the Code.) The University of Virginia has refused any reduction in its lien even the one-third at-

torney's lien although the Attorney General concedes that the full amount of its claim must be reduced by that amount.

Section 8.01-66.9 reads in pertinent part:

> The Court in which a suit by an injured person . . . has been filed may reduce the amount of the lien, and apportion the recovery between the plaintiff, the plaintiff's attorney, and the Commonwealth or such institution as the equities of the case may appear, *where the first offer acceptable to plaintiff's attorney is not made until seventy-two hours prior to the date for trial.*

The language above can be confusing unless read in light of the purpose of the statute and the principles of statutory construction. The original code section merely created a lien upon a claimant's recovery in behalf of certain state agencies and institutions. The key provision above was added in 1981.

At common law, no lien existed for the Commonwealth or appropriate health care institution against an injured person's potential recovery from the tortfeasor causing injury. Such a lien is purely the creature of § 8.01-66.9.

Statutes creating liens that are regarded as in derogation of the common law are to be strictly construed. *See, In re Opportunities Industrialization Center of Atlanta, Inc.*, 26 Bankr. 394 (Bankr. Ga. 1983); *Ruslaine Homes v. Guest*, 303 A.2d 623 (N.J. Super. 1973); *Southern Attractions v. Grace*; 93 So. 2d 120 (Fla. 1957); *Tanner v. Foley Bldg. and Mfg. Co.*, 48 So. 2d 785 (Ala. 1950); *see generally*, 51 Am. Jur. 2d *Liens* § 38; *see, Sydnor Pump & Well Co. v. Taylor*, 201 Va. 311 (1959); *Sellers v. Bles*, 198 Va. 49 (1956) (all statutes in derogation of common law to be strictly construed). A lien created by statute is limited in operation and extent by the terms of the statute, and can arise and be enforced only as provided for in the statute: the terms of the statute are controlling. *See, United States v. Limbs*, 356 F. Supp. 1004 (D. Ariz. 1973); *F. P. Baugh, Inc. v. Little Lake Lumber Co.*, 297 F.2d 692 (9th Cir. 1961); *see generally*, 51 Am. Jur. 2d *Liens*, sect. 38.

16

There is no definition of what constitutes an "offer acceptable to plaintiff's attorney." The Attorney General construes this language to mean an offer from the tortfeasor. If that is the case, then why would the State agencies ever compromise a lien. If the defendant made no offer, then the lien would automatically attach to the trial judgment. If the defendant made an offer less than the liens and the plaintiff accepted the offer, the liens would eliminate the recovery but for the attorney's lien. It is difficult to believe that anyone would suggest that the intent of the legislature is to seize recoveries from plaintiffs to benefit lawyers and state agencies. It also raises severe constitutional questions for a court to determine what constitutes an acceptable offer between party litigants who are private persons.

There is, however, a way of reading the statute which conforms with general statutory construction and creates a logically conceived and constitutionally acceptable statute. The provision in question in the case at bar should be viewed in the nature of a limiting provision to a statute creating a lien. That is, the key clause in § 8.01-66.9, a 1981 amendment to the original lien-creating statute, for all intents and purposes releases an automatic lien and puts the lien at the discretion of the court. Since under statutory construction the statute creating the lien is to be construed narrowly, the provision restricting application of the statute should be viewed expansively. Thus, the triggering phrase (no "offer acceptable") should be given a wide interpretation. This means that "offer acceptable" must be read in narrow terms, confined to the spirit of the statute.

Likewise, "offer" should be construed in a manner that would conform to the public policy of protecting debtors and indigents. *See*, 3A Sutherland, Statutory Construction §§ 69.01 and 69.06 (4th ed. 1986) (statutes interpreted to favor debtor over creditor, *i.e.*, broad reading of statutory exemptions for debtors); *see*, Va. Code § 37.1-116 (public policy protecting indigent debtors indicated by language which states that Dept. of Health not required to collect expenses and charges when collection would work financial hardship on indigent).

The key provision can be viewed as remedial, and thus must be interpreted so as to give the relief it

affords broad application. *See Hewitt v. Firestone Tire & Rubber Co.*, 490 F. Supp. 1358 (E.D. Va. 1980); *In re Snellings*, 10 B.R. 949 (Bankr. W.D. Va. 1981); *Scott v. Sylvester*, 220 Va. 182 (1979).

The obvious purpose and intent of the provision of § 8.01-66.9 is to encourage settlement of tort injury claims between all interested parties.

Settlement of the lien claims prior to trial allows the plaintiff and defendant to conduct their negotiations knowing with certainty the amount reserved to state agencies. Should the resolution of the lien question come too late, settlement may be defeated by the on rush of trial. The three day period allows the court to impose settlement upon the agencies in accordance with the statutory provisions, which action may allow the parties litigant to settle without trial.

The provision in question should be imagined as a Sword of Damocles: the threat of judicial reduction of the liens hangs overhead the lienors, a strong inducement to conduct productive settlement talks that will result in an offer acceptable to the plaintiff, in that it is an offer *responsive to the plaintiff's needs.*

In this case, it cannot be said that such an acceptable offer has been put before the plaintiff's attorney. The lienors (primarily U. Va. Hospital) have made no good faith attempt to compromise. They wish to rely on the settlement offer of Defendant's carrier to constitute a full settlement of the case (the "offer acceptable" under the statute). But Plaintiff's attorney cannot realistically even contemplate accepting that settlement on behalf of his client unless the liens are reduced; otherwise his client would be left with virtually no recovery at all and may as well go to trial. The lienors lack of good faith effort to settle all claims in this matter is in clear disregard of the intent of § 8.01-66.9, and thus the consequences of that lack of effort, the possible reduction of the liens by the Court, have been triggered, since no acceptable offer has been tendered.

One could hardly devise a case more likely to illustrate the inequities that this 1981 amendment has attempted to cure. The plaintiff is a young, black child profoundly physically and mentally handicapped as a result of this accident. He is being cared for by his grandparents, them-

selves people of limited income. His mother died less than seven months after the accident, ironically in an auto accident. The liability of defendant is a very close question which could be easily resolved in his favor. Lienor, The University of Virginia Hospital sees no need to negotiate and makes an offer only after discovering its lien is subordinate to the attorneys lien. This indigent child deserves a fairer hearing from these agencies of the Commonwealth. That hearing has not been forthcoming, so the Court will apply its own notions of equities as Section 8.01-66.9 directs.

The lien of the University of Virginia Hospital is reduced to $11,679.00.

The lien of the Medicaid Program is reduced to $3,321.

The fee of counsel is reduced to $25,000.

The guardian for the plaintiff will receive $60,000 to be held in trust in an income bearing investment approved by the Court to be held until his eighteenth birthday.