STATE *ex rel.* JAMES P. HILL v. THE HONORABLE F. P. CONE, Governor; THE HONORABLE J. M. LEE, State Comptroller, and THE HONORABLE W. V. KNOTT, State Treasurer, as and Constituting the State Board of Administration.

191 So. 50

Opinion Filed August 1, 1939

Rehearing Denied August 19, 1939

2

*Loftin, .Calkins & Anderson,* for Relator;

*George Couper Gibbs,* Attorney General, and *J. Compton French,* Assistant Attorney·General, for Respondents;

*Blount & Jones, T. J. Swanson, Keen & Allen, J. Velma Keen, Wm. P. Allen,* and *Lindsey & Ritter, Henderson & Franklin,* as *Amici Curiae;*

. *R. H. Merritt* and *J. .McHenry Jones,* for Intervening Respondents.

## STATEMENT

Prior to the advent of the motor vehicle as a transportation success, public roads in Florida for the use of animal-drawn vehicles and pedestrians were meagerly maintained in the several counties by a few days' work in person, or by proxy, annually by all resident able-bodied men between certain ages with stated exceptions; and later by county ad valorem taxation. See Thompson's Digest, p. 143, McClellan's Digest, p. 901; Ch. 4338, Acts of 1895; Ch. 6537, Acts of 1913; Butler v. Perry, 67 Fla. 405, 66 So. 150 (affirmed 240 U. S. 328, 36 S. Ct. 258, 60 L. Ed. 672). Heavy, rapidly-moving motor vehicles with complex mechanism required broader and hard, smooth-surfaced highways beyond the financial reach of counties. Motor vehicles require gasoline, and a uniform continuing excise tax on sales of gasoline levied by statute and collected by State officers without cost, solved the problem. The first excise tax on sales of gasoline was one cent per gallon levied by Chapter 8411, Acts of 1921. See Amos v. Gunn, 84 Fla. 285, 94 So. 615.

When motor vehicle transportation became practical and in general use, the insistent demands for good roads rapidly became universal, and public road construction by counties and districts became at once inadequate for the immediate needs and impatient enterprise of the people of the State. When a State system of highway construction and maintenance was established by the Legislature, Chapter 6883, Acts of 1915; Chapter 7328, Acts of 1917, the available funds from ad valorem taxation were insufficient for the desired elaborate State highway construction. The Constitution, in effect, forbade the issuance of State bonds for highway purposes, but this organic prohibition did not apply to counties or to districts. State v. Brevard County, 99

Fla. 226, 126 So. 353. The Constitution not forbidding, statutes authorized the counties to levy taxes and to issue county bonds to be paid by ad valorem taxation by the counties respectively for county road purposes. Road and bridge districts were authorized by statute with authority to issue district bonds for road purposes to be paid by ad valorem taxation in the districts respectively. Many road and bridge districts were established, some of them overlapping each other, and bond issues were lavishly made, many of them apparently without any reference to the ability of the districts to pay the bonds as contracted.

By statute the counties and road and bridge districts in this State were "authorized to aid in the construction of any State or State-aid road by contributions to the State Road Department of cash, bonds, time warrants, or other things of value in the construction or maintenance of roads." Chapter 8553, Acts of 1921; Section 1662, et seq., Comp. Gen. Laws 1927; Lewis v. Leon County, 91 Fla. 118, 107 So. 146. Many roads were rapidly constructed by counties and districts. In some instances it is probable that economy and permanent roads were not required, and the net result is a large road indebtedness of various counties and road and bridge districts. Numerous counties and road and bridge districts contributed bonds and "other things of value" to the State Road Department to be used in aid of the construction of State or State-aid roads in the counties and districts, respectively. Some payments on the bonds became burdensome or beyond the ability to pay by ad valorem taxation, and defaults in payments on county and district road bonds as contracted for, occurred in various counties and road and bridge districts. Section 6, Article IX, as amended in 1930, in effect recognized the power of the Legislature to establish districts and to authorize coun-

ties and districts to issue bonds, by forbidding further district bond and refunding bond issues except as provided in such organic section.

Many of the public roads constructed in whole or in part by counties or by districts are now by statute made State roads or a part of the State highway system extending into practically all the counties and many districts therein, all of which facilitates and increases the sale and use of gasoline in expeditious transportation of persons and property in every part of the State, to the great advantage and benefit of the public generally and particularly to the inhabitants and taxpayers and to the development of the varied natural resources of the State; therefore it is, as stated in Section 7, Chapter 15659, Acts of 1931, quoted in the opinion, the province of the State to make provisions to meet duly authorized State obligations incurred in taking over roads for State purposes, by the enactment and enforcement of appropriate laws. This may be done by any means within the judgment of the Legislature that is not repugnant to the Constitution. See State *ex rel.* Luning v. Johnson, 71 Fla. 363, 72 So. 477. It has been done by appropriation of portions of the receipts from excise taxes levied by statute on sales of gasoline used in transportation over the public roads in the entire State, to pay for the roads taken over by the State prior to 1931; and such policy may be continued for future payment for roads taken over by the State since the Act of 1931 until the roads taken over by the State for State roads are fully paid for. Statutes may definitely provide for and require the money so appropriated and allocated periodically to counties and road and bridge districts, when and as such funds so appropriated and allocated become county or district funds, to be properly and faithfully applied to the payment and retirement and cancellation of county

and district road bonds and outstanding road indebtedness incurred in the construction of the roads taken over by the State.

Chapter 14486, Acts of 1929, established a State Board of Administration to administer the public road indebtedness of the counties and road and bridge districts in the State and the funds derived from county and district taxation and from State excise gas taxes levied by statute and allocated and appropriated to repay counties and districts for amounts expended by them in the construction of roads taken over by the State, such allocations to be used in paying the road indebtedness of the counties and districts. Sections 1 and 8 of the Act are as follows:

"It is hereby declared by the Legislature of the State of Florida that all roads, highways and bridges which have heretofore been constructed or built, in whole or in part, from the proceeds of bonds issued by the counties of the State of Florida, or from the proceeds of bonds issued by special road and bridge districts under the laws authorizing same, have been and are, and will continue to be beneficial to the State of Florida at large; and have contributed substantially to the general welfare, settlement and development of the entire State."

"It is hereby declared that all bonds heretofore issued by any county or special road and bridge district, and outstanding at the time of the passage of this Act, and issued for the purpose of obtaining funds to pay for the construction of roads or roads and bridges, and all refunding bonds which have been issued by any county or special road and bridge district for the purpose of retiring bonds originally issued for the purpose of constructing roads or roads and bridges, shall remain obligations of said counties or special road and bridge districts, respectively, and each of said counties or

districts respectively, and each of said counties or districts shall be legally liable for the full amount of its bonds so issued by it outstanding, together with interest thereon until paid." See also Section 20, Chapter 14486, Acts of 1929.

Chapter 14575, Acts of 1929, levied excise gas taxes, a portion of which was levied to be allocated to the several counties to be administered under Chapter 14486, the State Treasurer being made *ex officio* county treasurer for the purposes of the relevant statutes.

A discussion of Chapter 14575 is contained in the opinions in Amos v. Mathews, 99 Fla. 1, 126 So. 308.

Chapter 15659, Acts of 1931, levied an excise tax of "six cents per gallon" on the first intrastate sale of gasoline and other like products of petroleum in this State, "such tax of six cents per gallon being made up of two separate taxes, being: First gas tax: A tax of three cents per gallon for the use of the State Road Department, as provided by law; Second gas tax: A tax of three cents a gallon to be apportioned (to the counties), as provided for in Section 8 of the Act." The first gas tax is paid into the "State Road License Fund." The second gas tax is paid into the "State Roads Distribution Fund." The policy of the State and the purposes of the statute are announced in Section 7 of the Act copied in the opinion.

This Court in construing and applying the provisions of Chapter 14486, Acts of 1929, and Chapter 15659, Acts of 1931, providing for the levy, collection and distribution of excise taxes upon the sales of gasoline for public road purposes including periodical payments to counties and road and bridge districts for the construction of roads taken over by the State for State purposes and as State expenses, with other important legal principles, held in Carlton v. Mathews, 103 Fla. 301, 137 So. 815, that:

"The fact that all, or a part of the expenditures and contributions of county or district funds in the construction of roads, since taken over by the State as State roads, and recognized under the provisions of House Bill 65X, Chapter 15659, Laws of Florida, Acts of 1931, were expended and contributed by said counties in the past, as distinguished from the present or the future, does not affect the legislative power to levy and tax and make the appropriation provided for the reimbursement of same.

"The command of Section 2, Article IX, Constitution, that 'the Legislature shall provide for raising revenue sufficient to defray the expenses of the State for each fiscal year,' includes such expenditures as may be authorized by the Legislature and which are not prohibited by the Constitution.

"The construction and maintenance of State roads are among the current expenses of the State, to defray which the Constitution commands the Legislature to provide for raising sufficient revenue for each fiscal year.

"The Legislature exercises plenary control over public highways.

"The fact that the roads taken over by the State had under statutory authority been constructed as a county or a district purpose and expense, does not affect the power of the Legislature by statute to make such previous construction of the roads a current State expense. Providing public roads as a State expense is not forbidden by the Constitution, and the Legislature had dominant authority in the premises.

"The organic requirement in Section 2, Article IX, Constitution, that 'the Legislature shall provide for raising revenue sufficient to defray the expenses of the State for each fiscal year' does not prohibit continuing tax levies and appropria-

tions for continuing State expenses. The intendment of the organic provision is that sufficient revenue shall be raised to defray all State expenses that are required by law to be paid in each fiscal year.

"Section 2 of Article IX, Constitution, does not require every State expense to be fully paid each fiscal year; it merely commands the Legislature to provide for raising revenue sufficient to defray the expenses of the State 'for each fiscal year.'

"The Legislature, without conflicting with the Constitution, may levy and collect a State excise tax on the sale of gasoline for the purpose, so far as the proceeds of said tax may annually go, of reimbursing the counties and special road and bridge districts for the money expended by them in the construction, or in aid of the construction, of public roads within such counties and districts, which roads had either theretofore been designated as State roads or were subsequently taken over by the State, and all of them now firmly welded into the State system of public highways.

"The Legislature has perhaps as much latitude in determining what constitutes a State purpose as it has in determining what constitutes a county purpose, and as to the latter this Court has several times held that it will not hold the legislative determination ineffectual unless the particular enactment violates some provision of the Constitution or can have 'no legal or practical relation whatever to any county purpose.'

"While constitutional principles do not change, sometimes conditions do change and new and different conditions arise, and new statutes are enacted to deal with them, and constitutional principles must be applied to such new statutes and conditions as they arise, fairly, intelligently and impartially.

"The principles of the Constitution must be preserved at all hazards, in all their pristine vigor and purity, and the language in which they are expressed given its plain and obvious meaning and true intent, uninfluenced by any spirit of expediency or opportunism. But in applying such principles to new or changed conditions, the courts should fearlessly face the facts—the actualities and realities of the situations and questions thus presented—and apply the principles of the Constitution to them without any sacrifice whatever of such principles, and without any strained construction of the language in which those principles are expressed." Carlton v. Mathews, 103 Fla. 301, 137 So. 815.

WHITFIELD, J.—On the relation of a resident citizen taxpayer of the State, an alternative writ of mandamus issued from this Court, in effect, alleges that the Board of Administration has a surplus of gas tax funds to the credit of stated counties, over and above current interest and sinking fund requirements to pay the road bonds of such counties, and as prayed by relator under Chapter 19279, Acts of 1939, commands the members of the board to pay over to the State Road Department 80% of the surplus in any county account, except sinking fund account, after such application as is provided by law, or to show cause. Respondents moved to quash the writ.

Without discussing the question of a proper relator, since the relator is a resident citizen taxpayer of the State and the matter presented is of public concern and immediate importance, the merits of the cause on motion to quash will be considered.

The controversy is as to the legal effect of an amendment to Section 14 of Chapter 14486, Acts of 1929, as amended by Chapter 15891, Acts of 1933, which amended section is as follows:

"Section 14. (a) The Board of Administration shall, annually before the 1st day of June of each year, carefully estimate the amount of money which will be available for the next fiscal year, for each of the accounts provided for by Section 13 of this Act.

"(b) In arriving at the amount of money available to meet the requirements of interest and principal or sinking funds of the bonds to which such accounts are applicable, respectively, the Board of Administration shall first apply any available funds in the Sinking Fund Accounts, so far as may be necessary. If the moneys so applied are not sufficient for said purpose in any county, it shall then apply to meet such requirements, so far as may be necessary, any money to the credit or estimated to be available for the credit of such county from the gas tax or other moneys made available by law as a supplementary source of revenue.

"(c) In so applying moneys credited to each county, except sinking fund accounts, there shall be apportioned to each subdivision (whether the county itself or road and bridge districts therein) such proportion of the moneys as the amount of the participating bonds of each subdivision bears to the aggregate amount of the participating bonds to which the accounts are applicable.

"(d) Provided, the State Board of Administration is hereby authorized and directed, by and with the approval of the county commissioners of the affected county, to be evidenced by a resolution thereof duly certified to and filed with said State Board of Administration, to use any or all of the moneys derived from gasoline taxes and credited to the account of such county, or road, or road and bridge district therein, for the purpose of purchasing at a price below the par value thereof, and at the lowest bid offered, any bond or bonds of any road district, road and bridge

district, or county district bond issue to which such moneys as credited to such county, would be applicable, the purpose and intention of this proviso being to direct and to require that all moneys derived from the additional sources of revenue provided by this Act, as amended, shall, if deemed advisable, be used for the best interests of the road districts, road and bridge districts, special road and bridge districts, and counties of the State by the purchase and acquisition of all outstanding bonds thereof which may be acquired at greatly depreciated prices below the par value thereof, whether such bonds be matured or unmatured or be in default or not for principal or interest. The State Board of Administration shall give due notice of its purpose to purchase any of such bonds by publication of such notice, at least one of which notices be published in a newspaper regularly published in the county where such bonds were issued. Such notice shall call for sealed bids and shall state the time and place at which said bids shall be opened. Said Board of Administration shall have the right to reject or accept any and all bids or portions of bids. And the said Board of Administration shall have the right to prescribe the security for the performance by the bidder.

"(e) All bonds purchased and acquired by the said Board of Administration under Paragraph (d) of this Section as amended, shall not be cancelled but shall be held in trust by the State Board of Administration to be retired by said State Board of Administration only when specially determined by said State Board of Administration to be for the best interest of the State of Florida and the several counties and districts thereof contemplated by this Act.

"(f) The Board of Administration shall keep a full, complete and accurate record of all purchases of bonds made under this section as amended, of the price paid for same

and from or through whom purchased. All securities pur-chased shall remain in the hands of the State Treasurer to be held by him as other funds and securities coming into his custody are held as provided by law.

"(g)  Resolutions adopted by county commissioners of the several counties under Paragraph (d) for the purpose of approving the purchase of bonds by the State Board of Administration as by said paragraph authorized, may con-tain such restrictions, conditions, and limitations as to price to be paid, and class, series or issue to be purchased, as the county commissioners may see fit to approve, and may be given for such period of time as in the judgment of the county commissioners is deemed for the best interest of the county.  Resolutions so adopted may be rescinded by the county commissioners, or thereafter amended or modified with like effect and authority as is given for the original adoption of such resolutions.

"Provided that any surplus in any county accounts, except sinking fund accounts, after such application as is provided herein, shall be remitted to the county for the use of which such account was created and shall be used by such county only in the construction and/or maintenance of roads therein."

The amendment to Section 14 by Chapter 19279, Acts of 1939, enacts as a substitute for the last paragraph of Section 14 above quoted the following:

"Eighty per cent (80%) of any surplus in any county account, except sinking fund account, after such application as is provided herein shall be remitted to the State Road Department to be used by the said State Road Department in the counties which are entitled to such credit in the con-struction of any State road before that time designated in such counties, regardless of the preferential system, and/or

in the purchase or lease of any toll bridge now or hereafter situated in said counties, or any bridge constructed or to be hereafter constructed by such county or any State agency therein, and which forms a link in any road now or hereafter designated a State road.

"Twenty per cent (20%) of any such surplus in any county account, except sinking fund account, after such application, shall be remitted to the county for use of which such county account was created, and shall be used by such county only for the construction and maintenance of roads therein.

"No second gas tax funds, placed to the credit of the several counties, which funds are administered by the State Board of Administration, shall be used for any other purpose than as expressly provided in this Section 14, any law or laws of the State of Florida to the contrary notwithstanding."

Relator, in effect, contends that the statute is within the authority of the Legislature to enact and that it is operative in full effect upon gas tax funds in the hands of the board for credit to the counties from the date of the enactment when the Act by its terms became effective.

Respondents in effect insist that the amending statute is not intended to so operate retrospectively as to apply to funds then in hand for credit to counties for road construction purposes, but applies to future collections from the effective date of the amending statute, which is June 9, 1939.

The funds are derived from State excise taxes on sales of gasoline to be used for public road purposes; and the allocations and appropriations of what is called the second gas tax is, primarily, to pay the counties and districts for roads constructed by them and taken over by the State for State purposes prior to July 1, 1931, and then to other road

purposes in the counties. Since 1931 many roads built by counties and districts have been taken over by the State; but no general statutory provision is made to pay for such roads, though the counties and districts greatly need the gas tax proration to pay debts incurred in constructing roads taken over by the State.

Section 7 of Chapter 15659, Acts of 1931, is as follows:

"Section 7. It is hereby expressly recognized and declared by the Legislature of the State of Florida that all roads being constructed or built or which have heretofore been constructed or built, or which will be hereafter constructed or built by the State Road Department under prior authorization and/or designation by the Legislature of the State of Florida as State Roads, or which were constructed or built by any county or special road and bridge district or other special taxing districts thereof, were, are and will be constructed and built as State projects and undertakings, and that the cost of the construction and building thereof was, is and will be a legitimate proper State expense incurred for a general and State purpose and should be wholly borne by the State of Florida. It is hereby expressly recognized that certain of the counties of the State of Florida and/or special road and bridge districts or other taxing districts of such counties have advanced or contributed and paid to the State Road Department varying sums of money to be used and expended by said State Road Department in the construction and building of State roads theretofore authorized and/or designated by the Legislature of the State of Florida as State projects, and it is hereby expressly recognized that certain of the counties of the State of Florida and/or special road and bridge districts or other taxing districts of such counties have paid or expended or caused to have been paid or expended varying sums of money in the

construction and building of certain roads that are now State roads and heretofore designated as State roads by the Legislature of the State of Florida and that all such moneys have been and are being expended, furnished, advanced, contributed or paid out on account of expenses of the State in construction and building of said State roads to and for the general benefit of the State and that such sums should be returned and repaid respectively to each county to the amount that such county and/or any special road and bridge district or special taxing districts thereof have advanced or expended in the construction of the same."

When transportation by motor vehicles became a practical success, good roads were essential; and as the State could not issue bonds for public road construction, and current ad valorem taxation was inadequate to supply suitable roads for heavy, rapid moving motor vehicles, resort was had to county and district bonds and taxation for good roads. This burden soon proved to be far too great for the counties and districts. Beginning in 1923 excise taxes on sales of gasoline were levied by the State for road purposes.

In 1929 and 1931 and 1933 and subsequent years statutes were inacted and State excise gas taxes were collected for State road construction and maintenance and for allocation and appropriation to the counties to pay for roads taken over by the State prior to July 1, 1931.

The essential question is not the validity of Chapter 19279, Acts of 1939, but the interpretation of the statute to accomplish the law-making intent in a regulation affecting the statutory regulations of excise taxes levied by the Legislature for public road purposes throughout the State.

While the Legislature has plenary power over the public roads in the state, and may regulate their construction and

maintenance by State officials or by county officials and at State expense or at county or district expense in the county or district, yet the Legislature, having taken over for State purposes many roads constructed by counties and districts, has by statute declared a purpose to compensate the counties and districts for the roads so taken over by the State, statutes giving relief to the counties should be interpreted to accord with such legislative purpose to do justice to the counties and districts. which have severally assumed large indebtedness for State road construction; and changes in statutory regulations should not be so interpreted as to deny the counties and districts full benefits of existing statutory regulations affording relief to counties and districts, when amendatory statutes do not clearly show an intent to make them retroactive to the detriment of counties which have large indebtedness for public road construction. The portion of Section 14 above quoted, before the amendment of 1939, authorized the counties to use surplus funds, if any, in constructing roads in the counties, and the counties were justified in making contracts or other arrangements to use for county road purposes any surplus accruing in the funds for current road purposes until the law is changed.

The law presumes that a regulatory statute is intended to operate prospectively unless a contrary intent clearly appears from a consideration of the terms and purpose of the enactment. There being nothing in the provisions of Chapter 19279 indicating an intent or purpose to retrospectively regulate the disposition of any surplus that may remain in allocations of gas tax funds to counties after satisfying all previous enactments on the subject, it will not be assumed that the Legislature intended that the Act should so operate as to interrupt or interfere with any authorized uses of such surplus funds, if any, that resulted

from payments of the gas tax before the effective date of the statute.

This interpretation is the correct one even if the rigid requirements of the budget laws would not be impaired by a retrospective operation of Chapter 19279. A further discussion is perhaps unnecessary.

The motion to quash the alternative writ is granted.

TERRELL, C. J., and BROWN, BUFORD and THOMAS, J. J., concur.

Justice CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.