625 So.2d 918 (1993)
MAYO CLINIC JACKSONVILLE, and Panayotis Kelalis, M.D., Appellants,
v.
DEPARTMENT OF PROFESSIONAL REGULATION, BOARD OF MEDICINE, Appellees.
No. 92-2892.
District Court of Appeal of Florida, First District.
October 15, 1993.
Michael J. Cherniga, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Tallahassee, for appellants.
Robert A. Butterworth, Atty. Gen., Claire D. Dryfuss, Asst. Atty. Gen., M. Catherine Lannon, Asst. Atty. Gen. of Dept. of Legal Affairs, Tallahassee, for appellees.
LAWRENCE, Judge.
Mayo Clinic Jacksonville and Dr. Panayotis Kelalis appeal a final administrative order entered by the Board of Medicine, interpreting section 458.313(1)(b), Florida Statutes (1989) (repealed 1990). The Board interpreted this section to require that physicians licensed by endorsement under this provision are restricted to practicing medicine at specific locations. We reject the Board's interpretation.
Mayo Clinic Jacksonville is a not-for-profit corporation, and Dr. Panayotis Kelalis is a Board-certified urologist who specializes in pediatrics and is employed on a full-time basis and exclusively by Mayo Clinic. Dr. Kelalis holds his Florida medical license by endorsement under section 458.313(1)(b).[1] *919 St. Luke's Hospital in Jacksonville became formally affiliated with Mayo Clinic, in 1987. Physicians employed by Mayo Clinic also became members of St. Luke's medical staff. St. Luke's provides inpatient services and Mayo patients requiring hospitalization are routinely admitted there. However inpatient pediatric services were not available at St. Luke's, so Dr. Kelalis sought privileges at another Jacksonville hospital in order to provide comprehensive services for the Mayo Clinic children in his care. That hospital asked the Board of Medicine whether granting staff privileges to Dr. Kelalis would violate his licensure status under the statute. The Board responded that Mayo physicians, such as Dr. Kelalis, who are licensed by endorsement under section 458.313(1)(b), may only practice medicine at Mayo Clinic Jacksonville or at its affiliated hospitals (i.e., St. Luke's Hospital).
Mayo Clinic Jacksonville and Dr. Kelalis petitioned the Board of Medicine for a declaratory statement regarding construction of section 458.313(1)(b).[2] At issue is the following clause:
Licensure under this paragraph is valid only while the physician holds said faculty appointment and is employed by the not-for-profit corporation and is not valid for any other kind of medical practice. The license of such physician shall be void upon his termination of such employment.
The Board has construed this language to mean that a physician licensed by endorsement under this provision must not only work full-time for Mayo Clinic, but may work only at physical facilities operated by Mayo Clinic and/or its affiliated hospitals.
The appellants contend the statute is clear on its face, and contains no site-specific restriction. The only restriction attached to medical licensure by endorsement is that such physicians must remain full-time employees of Mayo Clinic. We agree.
Where the language of a statute is clear and unambiguous on its face, it must be given its plain and ordinary meaning. Streeter v. Sullivan, 509 So.2d 268, 271 (Fla. 1987) (citing A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 1144, 137 So. 157, 159 (1931)); Steinbrecher v. Better Constr. Co., 587 So.2d 492 (Fla. 1st DCA 1991). "The starting point in statutory analysis is, of course, the language of the statute. Where the language used by the legislature makes clear the legislative intent, it is incumbent upon the courts to give effect to that intent." Barruzza v. Suddath Van Lines, Inc., 474 So.2d 861 (Fla. 1st DCA 1985). Courts may resort to legislative history, administrative construction of a statute, and rules of statutory construction only to determine the legislative intent of an ambiguous statute. Florida State Racing Comm'n v. McLaughlin, 102 So.2d 574, 576 (Fla. 1958). Generally, the interpretation of a statute by the agency charged with its enforcement is entitled to great deference and should not be overturned unless clearly erroneous or in conflict with the legislative intent of the statute. PW Ventures, Inc. v. Nichols, 533 So.2d 281 (Fla. 1988); Tri-State Sys., Inc. v. Department of Transp., 491 So.2d 1192 (Fla. 1st DCA 1986).
Although the Board's construction would ordinarily be accorded great deference, as it is the agency charged with the administration and regulation of physicians licensed under chapter 458, Florida Statutes (1989),[3] we overrule its construction because it is in clear conflict with the plain intent of the statute. Section 458.313(1)(b) is not ambiguous. The language of this provision clearly contains no restrictions with respect to the *920 locations where a physician licensed by endorsement may practice, so long as the physician works exclusively for a not-for-profit corporation. If the legislature had desired a site-specific restriction, it would have included such in the statute. Accordingly, we reverse the Board's final order.
SMITH and KAHN, JJ., concur.
NOTES
[1] Section 458.313 is the statute governing physician licensure by endorsement. Pursuant to this statute, physicians from other jurisdictions, who meet the criteria enumerated in the statute, can acquire a license to practice in Florida. Section 458.313(1)(b) provided an even more specialized way of obtaining licensure by endorsement. Physicians employed full-time and exclusively for a not-for-profit corporation (i.e., one meeting the requirements of § 617.01(3), Florida Statutes (1989)), and who met the other requirements contained in subsection (1)(b), could become licensed in Florida without having to take either of the two national exams in the last ten years.
[2] Although appellants did not petition the Board for a declaratory statement until the statute had already been repealed by sunset, review of the agency's statutory interpretation does not appear to be moot. Repeal of the provision precluded Mayo Clinic from acquiring future physicians through this alternate form of licensing, but did not affect those physicians already licensed under this provision.
[3] Sections 458.309, 458.313, Fla. Stat. (1989).