KAHN, J.
 

 Coventry First, L.L.C. (Coventry), appeals a final order denying its second amended complaint for injunctive relief and a declaratory judgment. Coventry contends the trial court erred as a matter of law by retroactively applying chapter 2007-249, section 1, Laws of Florida, an amendment to section 624.319, Florida Statutes (the 2007 amendment), to certain work papers submitted by Coventry to the appellee, the Office of Insurance Regulation (OIR), in the course of a regulatory investigation. Coventry also asserts error in the trial court’s treatment of “trade secret” objections to the publication of certain work papers. Because the trial court failed to apply the proper analysis to determine whether the application of the 2007 amendment impaired Coventry’s vested property rights, and erred in finding the trade secrets issue moot, we reverse the final order.
 

 I. FACTUAL AND PROCEDURAL BACKGROUND
 

 Coventry is a privately held viatical (life settlement) provider that purchases life insurance policies. The OIR is the state agency charged under the Florida Insurance Code in chapter 624, Florida Statutes (2007), with licensing and regulating Florida viatical settlement providers. Before the 2007 amendment, work papers were deemed “confidential” and “exempt from the provisions of [section] 119.07(1) and [section] 24(a), [Article] I of the State Constitution.”
 
 See
 
 § 624.319(3)(b), Fla. Stat. (2006). Beginning in October 2007, however, an amendment to section 624.319 effectively placed a time limitation upon the confidential and exempt status of work papers, extending such status only “until the examination report is filed, or until the investigation is complete or ceases to be active.”
 
 See
 
 Ch. 2007-249, section 1, at 2503, Laws of Fla. The amended statute further provides that it “applies to work papers and such information held by the department or office before, on, or after the effective date of this exemption.”
 

 This appeal concerns work papers in the possession of the OIR before the October 1, 2007, effective date of the amendment, and frames the question whether certain rights in the confidentiality of work papers that arose before the 2007 amendment may constitutionally be nullified by that amendment. As noted above, the appeal also questions whether work papers, in this case designated as Bates Stamped Pages 503-516 by the OIR, also are trade secrets that must be protected from disclosure.
 

 Coventry, a viatical settlement provider licensed under section 626.9912, Florida Statutes (2007), has provided thousands of pages of documents as the result of the OIR’s regulatory inspection demands. Typically, the OIR demanded that docu-
 
 *555
 
 raents requested by on-site examiners be delivered virtually immediately to the OIR, without a meaningful opportunity for Coventry to cull through the documents in advance. Accordingly, Coventry did not generally review these documents for trade secret information or designate certain documents as trade secret documents, nor did it have a meaningful opportunity to review documents for confidential personal information concerning its clients and its business practices.
 

 According to an affidavit provided by Coventry’s CEO, these documents contained trade secrets and confidential personal information. Such information included identification of brokers, names and addresses of viators, medical and personal financial information about insureds and potential viators, insurance policy numbers, negotiated contract prices, and identities of underwriting vendors.
 

 The OIR received public records requests seeking information the agency had demanded from Coventry, including documents containing the information set forth in the previous paragraph. Upon learning of this request, Coventry brought a lawsuit seeking declaratory and injunctive relief to protect confidential information. Before issuance of the final order here under review, Coventry obtained four separate temporary injunctions, providing protection to Coventry against the release of confidential information. In the order granting the fourth temporary injunction, the trial court made detailed findings of fact, including:
 

 Coventry has obtained the services of individuals and organizations with skills and expertise essential to Coventry’s successful operations: senior executives, persons and organizations skilled in medical review and underwriting, financial underwriting, actuarial science, marketing, and systems design, escrow agents, and banking facilities. Coventry has developed means, processes, and procedures to efficiently organize, process, evaluate, and price potential viatical settlement contracts. Coventry has compiled considerable information useful and used in its business, and has developed means, processes and procedures to efficiently organize and evaluate the compiled data.
 

 The trial court further determined that “Coventry regards and treats the information ... as Coventry’s trade secrets,” and further detailed an extensive list of those items constituting trade secrets.
 

 In reaching the findings and conclusions for the fourth injunction, the trial court did not view Coventry’s standing as an obstacle to relief. Instead, the court found Coventry has standing to protect its trade secrets and confidential personal information concerning its customers. Recognizing that Coventry was an “affected noncus-todian of a public record,” the trial court upheld Coventry’s right to seek adjudication of the confidential status of documents no longer in its possession.
 

 The case proceeded to an October 2008 final hearing. At that time, the court and the parties focused upon work papers designated as Bates Stamped Pages 503-516. Although these are not the only work papers in the OIR’s possession, they are the papers that were implicated as being responsive to the pending public records requests at issue in the case below. Coventry asserted that these documents are confidential and protected from disclosure on two grounds, as statutorily exempt work papers and as trade secrets. The Bates Stamped documents included the type of information detailed in the CEO’s affidavit (reiterated in live testimony at the final hearing), including information about insureds, brokers, purchase prices, payment amounts, funding sources, and the like.
 

 
 *556
 
 Before the final hearing, the OIR issued a show-cause order that actually set out the contents of the Bates Stamped documents. At the final hearing, Coventry’s CEO testified the company never had a meaningful opportunity to review or object to the show-cause order before its release.
 

 The parties stipulated that section 624.319, Florida Statutes, had been amended by chapter 2007-249, Laws of Florida, effective October 1, 2007. The parties further stipulated that the relevant investigation by the OIR had been completed on or before September 28, 2007. No factual dispute existed that Coventry had created the work papers at issue before the effective date of the 2007 amendment.
 

 Sometime after the hearing, the trial court entered an order denying Coventry’s complaint for injunctive relief. The order contains several rulings relevant to this appeal. First, the trial court looked to the wording of the 2007 amendment to section 624.319, noting: “from the plain language from the statute ... the legislature intended the documents received prior to October 1, 2007, be dealt with under the new statute.” The trial court did not, however, address the constitutional argument raised by Coventry concerning its vested property rights in the documents produced and turned over to the OIR under the old statute. Next, the trial court ruled that Coventry lacked standing to raise the exemptions set out by the 2007 amendment. Specifically, according to the trial court, only the OIR has standing to raise these exemptions under the new statute.
 

 The trial court determined the “trade secrets” issue was moot, observing that the same information had been essentially revealed in the OIR’s show-cause order, by that time posted on the OIR’s public internet site. The court did not consider the propriety of the OIR’s actions in issuing the show-cause order, nor did it consider certain exceptions to the “mootness” doctrine, including the likelihood that the issue would recur in the future and escape review and the principle that a party cannot render a disclosure issue moot based on the party’s own unsanctioned disclosure of the data in question. Relying upon mootness, the trial court neither reached the merits of the trade secret objections nor made findings of fact concerning Coventry’s challenges. The court did state in a general manner that the documents in question “are not subject to any existing exemption to chapter 119, Florida Statutes.”
 

 Coventry seeks review of the order denying an injunction and determining that the work papers at issue are subject to public release. The trial court has issued a partial stay of the order pending appeal.
 

 II. ANALYSIS
 

 The agency contends that an order imposing injunctive relief is reviewed for an abuse of discretion, to the extent the ruling rests on “live testimony or other evidence that the trial court is singularly well-suited to evaluate.”
 
 See Smith v. Coalition to Reduce Class Size,
 
 827 So.2d 959, 961 (Fla.2002). This case does not present such a scenario. Coventry correctly characterizes its appeal as raising a challenge to the trial court’s interpretation and application of the 2007 amendment, which is a question of law we review de novo.
 
 See Zingale v. Powell,
 
 885 So.2d 277, 280 (Fla.2004);
 
 Lukács v. Luton,
 
 982 So.2d 1217,1218 (Fla. 1st DCA2008).
 

 A. Test for Retroactive Application of Statute
 

 “A retroactive statute is one which gives to preenactment conduct a different legal effect from that which it would have had without the passage of the statute.” Charles B. Hochman, “The Supreme Court and the Constitutionality of Retroactive
 
 *557
 
 Legislation,” 73
 
 Harv. L. Rev.
 
 692, 692 (1960). “The general rule is that a substantive statute will not operate retrospectively absent clear legislative intent to the contrary, but that a procedural or remedial statute is to operate retrospectively.”
 
 State Farm Mut. Auto. Ins. Co. v. Laforet,
 
 658 So.2d 55, 61 (Fla.1995).
 

 Tracking the constitutional reasoning used by the United States Supreme Court in
 
 Ruckelshaus v. Monsanto Company,
 
 467 U.S. 986, 1001-14, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984), and
 
 Landgraf v. USI Film Products,
 
 511 U.S. 244, 280-86, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Florida Supreme Court has described the proper two-pronged analysis for determining whether an enactment such as the 2007 amendment should have retroactive application. “The first inquiry is one of statutory construction: whether there is clear evidence of legislative intent to apply the statute retrospectively.”
 
 Metro. Dade County v. Chase Fed. Hous. Corp.,
 
 737 So.2d 494, 499 (Fla.1999);
 
 see Landgraf,
 
 511 U.S. at 280, 114 S.Ct. 1483;
 
 Lakeland Reg’l Med. Ctr., Inc. v. Agency for Health Care Admin.,
 
 917 So.2d 1024, 1030 (Fla. 1st DCA 2006). “[T]o determine legislative intent as to retroactivity, both the terms of the statute and the purpose of the enactment must be considered.”
 
 Chase Fed. Hous.,
 
 737 So.2d at 500;
 
 see State ex rel. Hill v. Cone,
 
 140 Fla. 1, 191 So. 50, 57 (1939). “A statute does not operate ‘retrospectively’ merely because it is applied in a case arising from conduct antedating the statute’s enactment.”
 
 Landgraf,
 
 511 U.S. at 269, 114 S.Ct. 1483. “Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment.”
 
 Id.
 
 at 269-70, 114 S.Ct. 1483. “The general rule is that in the absence of clear legislative intent to the contrary, a law affecting substantive rights, liabilities and duties is presumed to apply prospectively.”
 
 Chase Fed. Hous.,
 
 737 So.2d at 499;
 
 see Arrow Air, Inc. v. Walsh,
 
 645 So.2d 422, 424 (Fla.1994). However, “the presumption against retroactivity is only a default rule of statutory construction.... Thus, the presumption is rebutted by clear evidence of legislative intent.”
 
 Chase Fed,. Hous.,
 
 737 So.2d at 500;
 
 Arrow Air, Inc.,
 
 645 So.2d at 425. Generally, “a procedural or remedial statute is to operate retrospectively.”
 
 Laforet,
 
 658 So.2d at 61.
 

 For purposes of the present analysis, the Legislature enacted two significant changes in the amendment: 1) the previously unlimited confidential and exempt status of work papers would last only “until the examination report is filed or until the investigation is completed or ceases to be active”; and 2) this abbreviated exemption from disclosure applied to “work papers and such information” held by the OIR “before, on, or after the effective date of this exemption.” The legislative inclusion of new time limitations upon the confidential and exempt status of “work papers” attached significant “new legal consequences to events completed before its enactment.”
 
 Landgraf,
 
 511 U.S. at 270, 114 S.Ct. 1483;
 
 see Arrow Air, Inc.,
 
 645 So.2d at 425. The trial court therefore correctly decided the Legislature intended the new provisions to operate retroactively. The trial court should not have ended its inquiry there.
 

 “If the legislation clearly expresses an intent that [an act] apply retroactively, then the second inquiry is whether retroactive application is constitutionally permissible.”
 
 Chase Fed. Hous.,
 
 737 So.2d at 499;
 
 Fla. Hosp. Waterman, Inc. v. Buster,
 
 984 So.2d 478, 487 (Fla.2008). The nature of the inquiry in the second prong is well-established:
 

 A retrospective provision of a legislative act is not necessarily invalid. It is so only in those cases wherein vested rights are adversely affected or de
 
 *558
 
 stroyed or when a new obligation or duty is created or imposed, or an additional disability is established, on connection with transactions or considerations previously had or expiated.
 

 McCord v. Smith,
 
 48 So.2d 704, 708-09 (Fla.1949);
 
 Chase Fed. Hous.,
 
 737 So.2d at 503. Thus, even where the Legislature clearly evinces an intent that a statute have retroactive effect, a court will refuse “to apply a statute retroactively if the statute impairs vested rights, creates new obligations, or imposes new penalties.”
 
 Lafor-et,
 
 658 So.2d at 61. This rule recognizes “retroactive application of statutes can be harsh and implicate due process concerns.”
 
 Chase Fed. Hous.,
 
 737 So.2d at 499. Coventry correctly notes the trial court erred in failing to address and adjudicate this required second prong of the legal analysis. Because this analysis involves a pure issue of law, and judicial economy would be poorly served by a remand, we address the question based on the record before us.
 
 See Hoelzle v. Shapiro,
 
 736 So.2d 1207, 1208 (Fla. 1st DCA 1999) (stating that even in the absence of a trial transcript, the appellate court could resolve a pure question of law).
 

 The classification of trade secrets and other work papers as potentially implicating a protected interest conforms with the proposition that “property” includes “the products of an individual’s ‘labour and invention.’ ”
 
 Ruckelshaus,
 
 467 U.S. at 1002-03, 104 S.Ct. 2862 (1984) (quoting 2 W. Blackstone,
 
 Commentaries
 
 *405). In determining whether governmental action is more than mere “regulation” and rises to the level of a “taking,” courts must consider several factors, including “the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations.”
 
 PruneYard Shopping Ctr. v. Robins,
 
 447 U.S. 74, 83, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980).
 

 Coventry asserts the retroactive application of the 2007 amendment would impair its substantive vested rights, violate due process, and constitute a taking without just compensation. The confidential, exempt status of work papers in the OIR’s custody found express assurance by statute through September 30, 2007. Those same documents, however, under the terms of the amendment, immediately lost protection from public disclosure once the amendment became effective. Coventry showed that its work papers contain sensitive personal and financial information about its clients and employees — data compiled by the company based on a reasonable belief the same would remain confidential and exempt from public disclosure without time limitations. The work papers also include Coventry’s proprietary marketing and pricing data which, if disclosed to the company’s competitors and potential clients, could very well undermine Coventry’s competitive position in the viatical agreement market and render Coventry liable to privacy lawsuits. The pre-amend-ed version of section 624.319, Florida Statutes, reasonably seems to have been enacted to protect entities like Coventry that compile, process, and retain very personal, sensitive information about their clients’ health and financial circumstances, as well as develop proprietary operating and sales procedures designed to allow the company to compete successfully in the viatical settlement market.
 

 A vested right must be “more than a mere expectation based on an anticipation of the continuance of an existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand.”
 
 Div. of Workers’ Comp. v. Brevda,
 
 420 So.2d 887, 891 (Fla. 1st DCA 1982) (quoting
 
 Aetna Ins. Co. v. Richar-delle,
 
 528 S.W.2d 280, 284 (Tex.Civ.App. 1975)). By way of analogy, our public
 
 *559
 
 records law recognizes the potential for harm where previously protected records become available to the public upon the repeal of statutory protections:
 

 Records made before the date of a repeal of an exemption under this section may not be made public unless otherwise provided by law. In deciding whether the records shall be made public, the Legislature shall consider whether the damage or loss to persons or entities uniquely affected by the exemption of the type specified in subpara-graph (6)(b)2. or subparagraph (6)(b)3. would occur if the records were made public.
 

 § 119.15(7), Fla. Stat. (2007). Subpara-graph (6)(b)2. allows the creation, revision, or maintenance of an exemption if it serves a compelling public purpose such as protecting sensitive personal information about identified individuals, “the release of which information would be defamatory to such individuals or cause unwarranted damage to the good name or reputation of such individuals or would jeopardize the safety of such individuals.” Subparagraph (6)(b)3. refers to exemptions that protect “information of a confidential nature concerning entities, including, but not limited to, a formula, pattern, device, combination of devices, or compilation of information which is used to protect or further a business advantage over those who do not know or use it, the disclosure of which information would injure the affected entity in the marketplace.”
 

 We do not find the legislative consideration, mandated by law, anywhere in the 2007 amendment. Instead, we conclude that retroactive application of the 2007 amendment improperly deprived Coventry of vested property lights in the continuing confidentiality and exemption of its trade secrets and other work papers already submitted to the OIR pursuant to the agency’s regulatory duties. In a different context, our supreme court in
 
 La-foret,
 
 658 So.2d at 55, determined that a statute altering damages recoverable in a statutory first-party bad-faith action was a new penalty, not merely an increased sanction. The amendment in
 
 Laforet
 
 could not be applied retroactively, notwithstanding an express legislative statement that the statute was remedial and was intended to have retroactive application.
 
 See id.
 
 at 61-62.
 

 Our understanding of
 
 Florida Hospital Waterman v. Buster, supra,
 
 comports with our conclusion here. In that case, the supreme court examined whether newly enacted article X, section 25 of the Florida Constitution would apply retroactively. The amendment facilitated patient access to adverse medical incident records of medical providers.
 
 See
 
 984 So.2d at 482. Florida law had previously restricted access to such records. The court found providers had no vested right in the earlier regime of restricted access. The providers’ claims did not exceed a mere expectation the legislative policy limiting access to the peer review committees’ proceedings would continue. Significantly, the statutes in
 
 Buster
 
 neither created a privilege nor deemed relevant materials to be confidential or privileged.
 
 See id.
 
 at 490. Instead, the statutes abrogated by the new amendment simply provided a shield from “discovery or introduction into evidence in any action against a health care provider arising out of the matters which are the subject ... of the inquiry.”
 
 Id.
 
 By contrast, the amendment we consider here reversed the earlier version of section 624.319, which had made work papers “confidential” and “exempt from the provisions of [section] 119.17(1) and [section] 24(a), [article] I of the State Constitution” with no time limitation on that confidentiality or exemption. See § 624.319(3)(b), Fla. Stat. (2006). The
 
 Buster
 
 court applied the amendment retroactively because the pro
 
 *560
 
 viders could not show an implication of their due process rights.
 
 See
 
 984 So.2d at 494;
 
 see also Lakeland Reg. Med. Ctr.,
 
 917 So.2d at 1033 (affirming a ruling that statutory changes did not violate the appellant/medical center’s due-process rights because its interest in reducing its own exposure to competition was not a constitutionally protected property right);
 
 Brev-da,
 
 420 So.2d at 891 (holding that the repeal of a statute authorizing an award of attorney’s fees against appellant precluded awarding fees to a crime victim who was injured before the repeal of the statute but contracted with his attorney after the repeal, where the victim’s right to fees under the statute was merely remedial or procedural and could not be deemed to vest without a legally proper award pursuant to judgment).
 

 The OIR asserts that the language in the pre-amended statute indicating the confidentiality and exemption protection could sunset unless re-enacted placed Coventry on notice of the impermanent prospects for the confidential, exempt status of the work papers. Responding that the 2007 amendment affected more than a mere expectation of continuing protection, Coventry relies on
 
 Mayo Clinic Jacksonville v. Department of Professional Regulation,
 
 625 So.2d 918 (Fla.'1st DCA 1993). In
 
 Mayo Clinic Jacksonville,
 
 a special licensing statute allowing physicians to become “licensed by endorsement” was repealed by sunset. Although appellants did not petition the Board of Medicine for a declaratory statement until the statute was repealed, the claim was not moot, for the repeal did not affect those doctors already licensed before the sunset date.
 
 See id.
 
 at 918-19 & n. 2. Coventry properly applies the reasoning in
 
 Mayo Clinic Jacksonville
 
 to the sunsetting of pre-amended section 624.319, Florida Statutes. That is, the repeal of guaranteed, continuing confidentiality and exemption provisions by sunset would not affect substantive rights to such protection that already had vested, i.e., work papers demanded by the OIR under its regulatory authority and submitted to it by Coventry before the 2007 amendment provided actual notice of the time limits on confidentiality and exemption.
 

 B. Trade Secrets Claim
 

 We also find error in the trial court’s application of mootness to the “trade secrets” claim. We examine the mootness determination de novo.
 
 See Carlin v. State,
 
 939 So.2d 245, 247 (Fla. 1st DCA 2006). Although the OIR published the information in its show-cause order, the contents of the order included the proprietary information taken from Coventry’s records — the very subject of this litigation.
 

 Mootness will not foreclose an opportunity for review in circumstances where the issue is likely to recur but would evade review.
 
 See Enter. Leasing Co. v. Jones,
 
 789 So.2d 964, 965-66 (Fla.2001). Moreover, Coventry notes the show-cause order that purportedly moots this claim was issued while the OIR remained subject to a temporary injunction, dated April 20, 2007, which expressly prohibited the public release of such information. Such assertion has not been seriously contested. Courts have held that a party can be es-topped from asserting a defense after the party has agreed to terms that would preclude raising the defense.
 
 See, e.g., Jasz-ay v. H.B. Coi~p.,
 
 598 So.2d 112 (Fla. 4th DCA 1992) (stating that a nursing home that stipulated to a 60-day extension of the pre-suit screening period was estopped from later asserting a limitations defense in a malpractice action). Similarly, a party should not be allowed to violate a rule and then use its own violation to the disadvantage of the opposing party.
 
 See, e.g., Scipio v. State,
 
 928 So.2d 1138, 1150 (Fla. 2006) (finding harmful error where the State violated discovery by purposefully
 
 *561
 
 failing to inform the defense that the medical examiner’s investigator had recanted a material prior statement, and in closing argument the prosecutor ridiculed defense counsel’s attempt to present a defense based on the now-changed testimony). By analogy, the OIR’s public release of Coventry’s protected documents, contrary to the injunction, without affording the company a reasonable advance opportunity to review was improper and will not be available to bootstrap up a later claim of mootness. Also, this issue may well recur when more public records requests are made. The show-cause order, relied upon by the trial court for its mootness conclusion, implicated only a fraction of the thousands of pages of Coventry’s documents the OIR demanded and received in its regulatory capacity.
 

 Coventry’s trade secrets are one component of the proprietary records that the company sought to protect from the retroactive application of the 2007 amendment.
 
 See
 
 § 812.081(l)(c), Fla. Stat. (2007) (defining “trade secret”). Under Florida law, trade secret information is “expressly made confidential and exempt from the public records law because it is a felony to disclose such records.” § 815.045, Fla. Stat. (2007). In this same provision, the Legislature recognized that the public disclosure of trade secrets in the custody of a state agency would financially harm the business interests of the individuals or entities seeking to protect their own trade secrets and would discourage cooperation and disclosure by the individuals and entities dealing with the agency. “Because of the intangible nature of a trade secret, the extent of the property right therein is defined by the extent to which the owner of the secret protects his interest from disclosure to others.”
 
 Ruckelshaus,
 
 467 U.S. at 1002, 104 S.Ct. 2862. The trial court found Coventry had taken reasonable steps to ensure that its commercially sensitive work papers and other information were not disseminated to its competitors. Disclosure of the company’s commercially valuable work papers to its competitors or to the general public could harm Coventry and provide an unfair advantage to the competition in what Coventry’s CEO described as “a new and emerging industry.” The trial judge acknowledged at the final hearing that competing companies are very likely to be interested in Coventry’s trade secrets, and that litigation is not a proper means of disclosing proprietary information to the benefit of competitors. Nevertheless, the effect of the court’s ultimate rulings would allow public disclosure of trade secrets and other protected work papers, to Coventry’s legal and financial detriment.
 

 We hold that the amendments here at issue are not retroactive as to Coventry’s work papers. We also hold that the trade secrets claim was not barred by mootness.
 

 REVERSED.
 

 LEWIS and WETHERELL, JJ., concur.