509 So.2d 1304 (1987)
J. Larry WILLIAMS, Appellant,
v.
Russell R. BEVIS and the Florida National Bank, a Florida Banking Corporation, Appellees.
No. BP-233.
District Court of Appeal of Florida, First District.
July 15, 1987.
Philip J. Padovano, Tallahassee, for appellant.
William L. Durden, and Stephen M. Durden, of Kent, Watts & Durden, Jacksonville; and F. Perry Odom, and Kelly Overstreet Johnson, of Ervin, Varn, Jacobs, Odom and Kitchen, Tallahassee, for appellees.
SHIVERS, Judge.
Appellant, J. Larry Williams, appeals from a summary judgment in favor of appellee, Russell R. Bevis. The issue in this case is whether there existed a genuine *1305 issue of material fact sufficient to preclude the granting of Bevis' motion for summary judgment. We reverse.
This appeal emanates from a lawsuit in which Williams sued Bevis for breach of a written agreement. The purpose of the agreement, which was entitled "Agreement for Joint Venture," was to purchase an option on a tract of land located in Leon County. Williams, an attorney, drafted the document. At the time the agreement was made, Florida National Bank owned the property. A key feature of the agreement was that Bevis was to provide the money for the purchase of the option, and in the event the property was sold, he and Williams were to split the proceeds. Williams was to receive 60% of the profits, Bevis 40%. The agreement states that Williams was to use Bevis' money to "attempt to purchase" the real estate and make "the proper and necessary efforts" to negotiate a subsequent sale of the property at a profit. It also provided that the parties' relationship would "terminate" when the property was "acquired and sold."
Shortly after entering into his agreement with Bevis, Williams went to Jacksonville and made an offer to purchase the Leon County property in his name using as an earnest money deposit a $10,000 check drawn on his own account. Bevis had furnished Williams with this money pursuant to their written agreement. The Bank informed Williams it would not be making a decision on his offer until the following week; however, Williams was about to embark on a two-week trip to Europe. According to Williams' deposition testimony, Bevis asked him before he left for Europe to prepare a power of attorney so he could resell parts of the property in the event any sales were required during Williams' absence. Williams testified he gave Bevis such a power of attorney and told him he would prepare a more specific power of attorney allowing him to make a new offer to purchase the property should the Bank reject the original offer in his absence. Bevis denies he ever had a conversation with Williams about a more specific power of attorney.
Williams learned while he was in Europe that the Bank had sold the Leon County property to a third party, and that this was largely due to Bevis, who had offered to purchase the property on behalf of himself and several other investors. The Bank still had Williams' earnest money deposit of $10,000 which was drawn on his account, and the new parties used the same check as an earnest money deposit supporting Bevis' new offer. The Bank accepted Bevis' offer to purchase the property, and Bevis resold the land for a total profit of $200,000. After payment of the expenses and distribution of the profits to the other investors, Bevis' share of the profits was approximately $50,000.
Williams filed suit against Bevis seeking damages for lost profits. Williams' initial complaint contains three counts, one for breach of the original agreement, one seeking to impress a constructive trust upon the $200,000 profit earned from the sale of the Leon County property, and one count requesting an order in equity against Bevis and several other parties, declaring the October 28, 1984, contract to include Williams' name. The trial court entered summary judgment in favor of Bevis after concluding that there existed no genuine issues of material fact. The court observed there was no evidence to support the breach of the undertaking contained in the agreement.
Construing the facts in a light most favorable to the nonmoving party, we find that genuine issues of material fact existed which should have precluded the trial court from granting summary judgment. The trial court judge noted in his final order that Williams admitted his $10,000 deposit came from funds Bevis had furnished and that Williams had not sought return of these funds. However, the gist of Williams' legal theory is that he lost profits because Bevis breached an exclusive business agreement in which he was to put up the needed capital. Williams specifically *1306 sought recovery for these lost profits in his complaint. Bevis' having provided the money for the deal did not affect Williams' right to sue for lost profits over Bevis' apparently deliberate effort to exclude him from the transaction altogether.
Bevis alleges his only obligation under the contract was to supply Williams with capital, an obligation which he fulfilled. That done, Bevis continues, his obligations under the agreement were complete and he could not therefore be liable on a breach of contract theory. Accordingly, Bevis concludes, there existed no issue of material fact for the jury and summary judgment was properly granted.
For several reasons, we find Bevis' theory may not fully explain the rights and liabilities of the parties under the disputed agreement. The explicit language of the agreement casts doubt on whether Bevis' only obligation was that of providing the money for the initial offer because it contains such terms "attempt to purchase" and "use proper and necessary means." This language suggests the parties agreed to an ongoing attempt at purchasing the disputed property. We also find Bevis' interpretation of the agreement to be unduly restrictive because it implies he and Williams had bargained for the sole purpose of making one, and only one, offer to purchase the property, and that parties in business transactions generally regard their first bid on a piece of property as their highest and best offer. We think this assumption is incorrect, especially in the instant case where a joint agreement contains language strongly suggesting sustained efforts to purchase property. Bevis contended both in his brief and at oral argument that because the written agreement acknowledges Williams' business expertise and provides for Williams to negotiate the purchase of the land, he was barred from making repeated offers to purchase the property. Unfortunately, this contention, when juxtaposed with express contract terms such as "attempt to purchase" and "use necessary and proper means," only tends to throw into sharper relief the fact that this was a question best left for the jury to decide.
Despite the presumption of correctness which attaches to a trial court order, appellate courts must view every possible inference in favor of a party against whom a summary judgment motion is granted. Wills v. Sears, Roebuck & Co., 351 So.2d 29 (Fla. 1977). Further, the moving party must show conclusively the absence of any genuine issue of material fact. Id. This court has recognized that "[a] summary judgment is appropriate only when the `facts are so crystalized that nothing remains but questions of law' and there is not the `slightest doubt' as to any issue of material fact." Aloff v. Neff-Harmon, Inc., 463 So.2d 291, 294 (Fla. 1st DCA 1984) (citing Harris v. Lewis State Bank, 436 So.2d 338, 340 (Fla. 1st DCA 1983)). In light of the contract's language suggesting the parties had mutually agreed to procure the property in question through more than one offer, we hold that a question for the jury was presented on the issues of what the respective duties of Williams and Bevis were under the contract and whether Bevis had breached his obligation through entering into an agreement with the Florida National Bank to purchase the property on his own behalf.
REVERSED.
THOMPSON and NIMMONS, JJ., concur.