512 So.2d 258 (1987)
STATE OF FLORIDA DEPARTMENT OF ENVIRONMENTAL REGULATION, Appellant
v.
C.P. DEVELOPERS, INC., Appellee.
No. BT-151.
District Court of Appeal of Florida, First District.
August 24, 1987.
Douglas H. MacLaughlin, Asst. Gen. Counsel, State of Fla. Dept. of Environmental Regulation, Tallahassee, for appellant.
Frank E. Matthews and Kathleen L. Blizzard, of Hopping, Boyd, Green & Sams, Tallahassee, for appellee.
*259 JOANOS, Judge.
The Florida Department of Environmental Regulation (DER) appeals the trial court's order granting partial summary judgment as to three counts of an eightcount complaint filed by C.P. Developers, Inc. (C.P. Developers). The issues presented are: (1) whether there are disputed issues of fact with regard to establishment of a jurisdictional determination on C.P. Developers' property prior to the effective date of the Warren S. Henderson Wetlands Protection Act of 1984; (2) whether there are disputed issues of fact concerning the grandfather provisions of Florida Administrative Code Rule 17-4.022(8); and (3) whether, there are disputed issues of fact warranting application of the doctrine of equitable estoppel to preclude DER from enforcing its jurisdiction under the Warren S. Henderson Wetlands Protection Act against C.P. Developers. We reverse.
The record reflects that in October 1983, at the request of C.P. Developers, DER representative Timothy Deuerling performed an on-site determination of DER's dredge and fill jurisdiction on C.P. Developers' Stonebridge property. Mr. Deuerling testified that he walked the property and made a rough "eyeball" determination of DER's jurisdictional line. The line was then flagged. According to Mr. Deuerling, he asked C.P. Developers to have the line surveyed and to send copies of the survey to him for verification. Mr. Deuerling also stated that while the flagged line in this instance was roughly coincidental with the + 2 foot mean sea level (MSL) contour line, the + 2 foot MSL contour line was not intended to delineate jurisdiction, since jurisdiction is delineated by vegetation, and not by elevation.
C.P. Developers submitted two affidavits controverting Mr. Deuerling's testimony insofar as the request for a survey is concerned. Mr. Caddell and Mr. Frye, acting as representatives of C.P. Developers, stated that they received no instruction from Mr. Deuerling that C.P. Developers need undertake any further action with regard to securing the jurisdictional line. In addition, the Caddell and Frye affidavits represent that the jurisdictional delineation made by Mr. Deuerling pertained to Stonebridge Unit II. Mr. Deuerling, on the other hand, considered his jurisdictional determination was for Unit I of the development, i.e., the northern part, which included lots one through seven. Mr. Deuerling stated he had no recollection of walking the southern portion of the development, which included lots fifteen through eighteen.
In February 1984, in response to a complaint, Mr. Deuerling again visited the Stonebridge site. His inspection revealed there had been construction within the state's jurisdiction. C.P. Developers agreed to move the unauthorized construction twenty feet landward of the formerly flagged line. In March 1984, C.P. Developers provided DER with notice of intent to construct a new stormwater discharge facility in Stonebridge Unit I. In a letter dated March 14, 1984, DER acknowledged receipt of the notice, and advised C.P. Developers that it appeared that Stonebridge Unit I was exempt from DER's stormwater permitting requirements, but noted that future permitting might be required if the current proposal were modified.
On October 14, 1985, Mr. Deuerling and another DER representative, met at the Stonebridge site with C.P. Developers' representatives to discuss the fill problem which is the subject matter of this appeal. According to Mr. Deuerling, DER investigators concluded that unauthorized filling had taken place within DER's expanded jurisdiction as established by the Warren S. Henderson Wetlands Protection Act of 1984, effective October 1, 1984. Ch. 84-79, s. 17, Laws of Fla.
On October 18, 1985, DER issued a warning notice to C.P. Developers, advising that the October 14, 1985, inspection by DER personnel revealed that C.P. Developers had placed fill within the landward extent of waters of the state. On November 4, 1985, DER reiterated its position regarding the warning notice, and further advised that any jurisdictional determination made prior to the October 1, 1984, effective date of the Warren S. Henderson Wetlands Protection Act of 1984 required written validation *260 from DER in order to remain valid after October 1, 1984. DER recommended entering into a consent order to resolve the dredge and fill violations at Stonebridge Unit II. On November 12, 1985, C.P. Developers advised that it found the terms of DER's proposed consent order unacceptable.
On May 30, 1986, C.P. Developers filed an 8-count complaint against DER. The allegations relevant to this case stated that in October 1983 a representative of DER informed C.P. Developers that DER's regulatory jurisdiction extended to the + 2 foot MSL contour line in an area where C.P. Developers planned to construct a residential subdivision; and acting in reliance on this jurisdictional determination, C.P. Developers acquired property and undertook construction at the site. C.P. Developers sought a declaration (1) that pursuant to the October 1983 jurisdictional determination, DER had no regulatory authority over C.P. Developers' dredge and fill activities on the Stonebridge site; (2) that DER's dredge and fill jurisdiction over the Stonebridge property was limited to the area waterward of the + 2 foot MSL contour elevation; and (3) that DER was equitably estopped to deprive C.P. Developers of the right to develop the Stonebridge property in accordance with the jurisdictional determination provided in October 1983.
On September 9, 1986, DER filed an answer and counterclaim, admitting that in 1983 a DER employee informally established a jurisdictional line, but denying all other allegations concerning the location of the line. In its counterclaim, DER alleged the dredging and filling was done without the required permit and within the landward extent of the waters as defined in rules adopted pursuant to the Warren S. Henderson Wetlands Act of 1984. DER sought to have C.P. Developers restore the area allegedly illegally dredged and filled after October 1, 1984, and to have C.P. Developers enjoined from further dredging and filling on the site within DER's expanded jurisdiction.
On November 25, 1986, C.P. Developers filed a motion for partial summary judgment, arguing that undisputed facts existed that the landward extent of waters of the state for dredge and fill regulatory jurisdiction at that time was the + 2 foot MSL elevation contour line. C.P. Developers further argued that DER is equitably estopped from not abiding by the 1983 determination, that the validation procedures in DER rules for grandfathering previously established jurisdiction lines was invalid, and that if the grandfather validation rule is valid  then C.P. Developers complied with the rule. C.P. Developers based its claim of compliance with the grandfathering provisions of the rule on its statement attached to its Notice of New Stormwater Discharge, which it had submitted to DER in March 1984. In addition, C.P. Developers submitted affidavits from Mr. Caddell and Mr. Frye attesting that C.P. Developers relied on the + 2 foot MSL contour line as the DER jurisdiction line, and acting on that reliance C.P. Developers had dredged and filled portions of the site and purchased 6.5 acres for the site plan.
On February 5, 1987, DER filed a response to C.P. Developers' motion for summary judgment, and a DER motion for summary judgment. DER alleged that disputed issues of fact remained concerning whether the October 1983 inspection could be relied upon as establishing the + 2 foot MSL contour elevation line as a jurisdictional line; that the 1983 jurisdictional determination was not validated to grandfather this line as provided in the Warren S. Henderson Wetlands Protection Act; that the validation rule is valid; and that equitable estoppel is not applicable in the circumstances of this case.
On March 17, 1987, the trial court granted partial summary judgment to C.P. Developers as to Counts I, II, and VI of the complaint. This appeal followed.
We note at the outset that a motion for summary judgment requires the court to view every possible inference in a light most favorable to the non-moving party, and summary judgment may be entered only if there is an absence of any genuine issue of material fact. Fla.R.Civ.P. 1.510(c); Moore v. Harris, 475 So.2d 666 *261 (Fla. 1985); Landers v. Milton, 370 So.2d 368 (Fla. 1979); Williams v. Bevis, 509 So.2d 1304 (Fla. 1st DCA 1987); Aloff v. Neff-Harmon, Inc., 463 So.2d 291, 194 (Fla. 1st DCA 1984), quoting Harris v. Lewis State Bank, 436 So.2d 338, 340 (Fla. 1st DCA 1983). A material fact is a fact that is essential to the resolution of the legal questions raised in the case. Wells v. Wilkerson, 391 So.2d 266, 167 (Fla. 4th DCA 1980). Moreover, even undisputed facts may establish the existence of genuine issues of fact, when different inferences reasonably may be drawn from those facts. Aloff v. Neff-Harmon, Inc., 463 So.2d at 294; Grady v. Humana, Inc., 449 So.2d 984, 985 (Fla. 1st DCA 1984); Aldridge v. Yellow Cab of Gainesville, Inc., 448 So.2d 1129, 1130 (Fla. 1st DCA), petition for review denied, 456 So.2d 1183 (Fla. 1984).
Our review of the pleadings, depositions, and affidavits filed in this case leads us to conclude that genuine issues of material fact exist concerning whether the October 1983 jurisdictional determination encompassed more than phase one of the Stonebridge development, and whether the + 2 foot MSL contour elevation line actually delineated DER's pre-Henderson Act jurisdiction. Therefore, we find the trial court erred in granting summary judgment to C.P. Developers on this point.
We find error also in the trial court's ruling that C.P. Developers substantially complied with the notification and validation procedures set forth in Florida Administrative Code Rule 17-4.022(8). Section 403.817(2), Florida Statutes, authorizes DER to promulgate rules "for determining the landward extent of the waters of the state for regulatory purposes."[1] Acting on this rule-making authority, DER adopted a list of aquatic plant species which are characteristic of areas subject to regular and periodic inundation of the state's waters. Department of Environmental Regulation v. Goldring, 477 So.2d 532, 533 (Fla. 1985). After enactment of the Warren S. Henderson Wetlands Protection Act of 1984, DER revised and codified Rule 17-4.022 to provide an expanded list of vegetative species for purposes of delineating the state's wetlands jurisdiction. Subsection (8) of Florida Administrative Code Rule 17-4.022 sets forth a procedure for "grandfathering" certain areas in which the old vegetative species indices, rather than new expanded species indices, would apply. The rule requires DER, upon request, to validate a jurisdictional determination made prior to October 1, 1984, if the grandfather provisions of the rule are satisfied. Occidental Chemical Agricultural Products, Inc. v. State Department of Environmental Regulation, 501 So.2d 674, 676-677 (Fla. 1st DCA 1987). Since the amendments to Rule 17-4.022 were approved by the legislature in Chapter 84-79, section 9, Laws of Florida, and were codified in section 403.8171, Florida Statutes, the rule should be treated as a statute.[2]Occidental Chemical v. State Department of Environmental Regulation, 501 So.2d at 677-678.
It is well settled that "[c]ourts should accord great deference to administrative interpretations of statutes which the administrative agency is required to enforce." Department of Environmental Regulation v. Goldring, 477 So.2d at 534; Pan American World Airways, Inc. v. Florida Public Service Commission, 427 So.2d 716, 719 (Fla. 1983). It is equally well settled that when the language of the statute *262 is clear and unambiguous, "the statute must be given its plain and obvious meaning." Holly v. Auld, 450 So.2d 217, 219 (Fla. 1984), quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 1144, 137 So. 157, 159 (1931).
Because the "grandfather" provisions set forth in Rule 17-4.022(8) are clear and specific, judicial construction is not indicated. The rule, which is to be accorded statutory treatment, states:
(8) The landward extent of waters of the state shall be determined using the vegetative index adopted June 10, 1975, as amended March 11, 1981, for all complete applications filed with the department before October 1, 1984. For all other areas where the department made a determination of the landward extent of the waters of the state using the vegetative index adopted June 10, 1975, as amended March 11, 1981, before October 1, 1984, the department shall, within 90 days of a request therefor, validate the determination if:
(a) The determination is graphically displayed on a map, drawing, or aerial photograph, or written in the form of a narrative description sufficient to identify the areas in question; and
(b) The determination was based on a site verification made by the department; and
(c) The document purporting to be the determination is signed by an employee of the department in the course of his official duties; and
(d) The document purporting to be a site verified written determination shall be submitted by certified mail within six months of October 1, 1984 to the department for validation.
Our review of the cases which have applied the rule to pre-Henderson Act jurisdictional validation determinations indicates that a "substantial compliance" with the rule procedure is not sufficient to validate a pre-October 1, 1984, jurisdictional determination. Rather, the cases demonstrate that validation of a pre-Henderson Act jurisdictional determination requires compliance with each of the rule's grandfather procedures, and an express finding of such compliance. Manasota-88, Inc. v. Wilbur Boyd Corporation and State of Florida Department of Environmental Regulation, 9 F.A.L.R. 644 (Fla.Dept.of Environ. Reg. 1986); Santa Fe Lake Dwellers Association, Inc. v. Department of Environmental Regulation, 9 F.A.L.R. 923 (Fla. Dept. of Environ.Reg. 1984). Furthermore, the prior jurisdictional determination must have been in writing. Manasota-88, Inc. v. Wilbur Boyd Corporation, supra. Once the criteria established in subparagraphs (a) through (d) are satisfied, persons with jurisdictional determinations made prior to October 1, 1984, based on the "old list" vegetative indices, are entitled to have their proposed project determined using the "old list" vegetation. Florida Audubon Society v. Department of Environmental Regulation, 9 F.A.L.R. 565 (Fla.Dept. of Environ.Reg. 1986).
We conclude that the record in the instant case does not demonstrate the requisite compliance with the grandfather procedures set forth in Florida Administrative Code Rule 17-4.022(8). In arriving at this conclusion, we expressly make no finding with regard to C.P. Developers' claim that the stormwater discharge notice constituted a "site verified written determination" of the October 1983 jurisdictional line within the meaning of subparagraph (d) of Rule 17-4.022(8). Even construing the stormwater discharge notice as C.P. Developers would have us do, we find the notice does not satisfy the requirements of subparagraphs (a) through (d) of the rule. Therefore, we must reverse the trial court's finding that C.P. Developers substantially complied with the grandfather procedures of Rule 17-4.022(8).
Finally, since there are disputed issues of material fact with regard to the October 1983 jurisdictional determination, we find the doctrine of equitable estoppel to be inapplicable in this case. The doctrine of equitable estoppel may be invoked against the state only in rare situations. Bryant v. Peppe, 238 So.2d 836, 838 (Fla. 1970). The elements of an equitable estoppel are:
(1) A representation as to a material fact that is contrary to a later-asserted position; *263 (2) reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon.
Tri-State Systems, Inc. v. Department of Transportation, 500 So.2d 212, 215-216 (Fla. 1st DCA 1986), review denied, 506 So.2d 1041 (Fla. 1987).
The record in this case reflects that there is a dispute concerning the extent of the October 1983 jurisdictional determination, and the validation of that jurisdictional determination. Therefore, C.P. Developers' alleged reliance on the pre-Henderson Act jurisdictional determination is not a sufficient basis upon which to invoke the doctrine of equitable estoppel against the state. In an analogous situation, this court held that "[t]he mere existence of a present right to a particular use of land, ... is not a sufficient `act' of government upon which to base equitable estoppel." State Department of Environmental Regulation v. Oyster Bay Estates, Inc., 384 So.2d 891, 894-895 (Fla. 1st DCA 1980). Furthermore, the availability of grandfather procedures to preserve the viability of a pre-October 1, 1984, jurisdictional determination effectively precludes application of estoppel against the state in this case. C.P. Developers failed to invoke the mechanism of Rule 17-4.022(8) to validate the jurisdictional determination upon which they now seek to rely. Therefore, the state may require C.P. Developers to pursue the permitting process before continuing with development which intrudes upon the state's jurisdiction.
Since we find there are disputed factual issues with respect to each of the points raised in this appeal, the trial court's award of partial summary judgment as to these points is reversed. Accordingly, this cause is reversed and remanded for proceedings consistent with this opinion.
WIGGINTON and ZEHMER, JJ., concur.
NOTES
[1] s. 403.817(2), Fla. Stat. (1983), provides, in relevant part:

(2) In order to accomplish the legislative intent expressed in subsection (1), the department is authorized to establish by rule, pursuant to chapter 120, the method for determining the landward extent of the waters of the state for regulatory purposes. Such extent shall be defined by species of plants or soils which are characteristic of those areas subject to regular and periodic inundation by the waters of the state. The application of plant indicators to any areas shall be by dominant species.
[2] In Department of Environmental Regulation v. Goldring, the Florida Supreme Court instructed that the provisions of Chapter 403, which were enacted "to protect the air and waters of Florida from pollution and degradation," were entitled to "a liberal construction in favor of the public." (citation omitted). 477 So.2d 532, 534 (Fla. 1985).