752 So.2d 637 (2000)
DEPARTMENT OF REVENUE, an Agency of the State of Florida, Appellant,
v.
BANK OF AMERICA, N.A., et al., Appellee.
No. 1D99-461.
District Court of Appeal of Florida, First District.
January 5, 2000.
Rehearing Denied March 22, 2000.
*638 Robert A. Butterworth, Attorney General; Jarrell L. Murchison, Assistant Attorney General, Tallahassee, for Appellant.
Peter O. Larsen and David E. Otero of Milam, Otero, Larsen, Dawson & Traylor, P.A., Jacksonville; David M. Wells and R. Eric Bilik of McGuire, Woods, Battle & Boothe, LLP, Jacksonville, for Appellee.
Russell B. Hale and Virginia B. Townes of Akerman, Senterfitt & Eidson, P.A., Orlando, for Amicus Curiae Florida Bankers Association.
JOANOS, J.
The Florida Department of Revenue (Department) seeks review of a final judgment rendered by the trial court in favor of Bank of America, N.A. (Bank), the successor by merger to NationsBank, N.A. The issue presented is whether a lender/financer is entitled to receive the legislatively created sales tax refund provided to motor vehicle dealers under the provisions of section 212.17(2) and (3), Florida Statutes. We reverse.
This action commenced in April 1997, when the Bank filed a complaint seeking refunds and credits pursuant to section 212.17(2) and (3), for sales tax paid by dealers in connection with motor vehicle installment sales contracts. The complaint states that at the time of sale, the vendors contemporaneously assign to the bank all right, title, and interest in the contracts, and the bank pays the vendors all amounts due under the contracts, including the full amount of any sales tax to be remitted by the vendors to the Department. The Bank alleged it is entitled to a sales tax refund or credit because it qualifies as a "dealer" as defined by section 212.06(2), and is registered as a dealer with the Department. Alternatively, the Bank alleged entitlement to refunds or credits "under well-settled Florida contract law to claim any applicable tax refunds or credits as assignee to the Vendors' rights under the Contracts."
The Department answered the complaint, and raised various affirmative defenses. Among other things, the Department asserted that because the Bank is not the selling dealer, it cannot satisfy the requirements of section 212.17, Florida Statutes, and therefore lacks standing to seek a refund or credit for the subject taxes. The Department attached its "final denial" of the Bank's application for refund to the answer and affirmative defenses. This denial letter states in pertinent part:
Bank does not meet the statutory requirements which require the applicant to be "a dealer who has paid the tax". The motor vehicle dealer is the entity who collected the tax from the purchaser and pays the tax to the Department. Section 212.17, F.S., does not entitle a third party who is "assigned" a security interest in tangible personal property to a refund on a bad debt or repossessed merchandise since they are not the "dealer who paid the tax". When section 1 of Ch. 67-518 Laws of Florida was enacted, the Legislature chose not to track the general refund statute that specifically allowed assignees to qualify for refunds and credits. Instead, it employed the language it used to clearly and emphatically limit the refund and credit to the selling dealer....
When, as here, the car sales are made on the bank's security agreements and, at the time of the sale, contemporaneously assigned to the bank in exchange for the bank paying the dealer the buyer's loan proceeds, the dealer does not retain a security interest in the property sold. Also, since the dealer has been paid, there can be no unpaid balance due the dealer on which to base the refund. Finally, under the transactions *639 at issue here, [Bank] repossessed the vehicles, not the dealer.
On March 17, 1997, the Department and the Bank entered into an agreement whereby the parties agreed the appropriate method of resolving the disputes between the Bank and the Department concerning the Bank's pending claims for sales tax refunds was through litigation filed in circuit court. The agreement included a methodology to ensure a proper and manageable record for litigation.
The record includes numerous Department memoranda reflecting the agency's efforts to devise a methodology for computing sales tax refunds consistent with the statutory provisions and Department rules. A memorandum dated December 18, 1996, includes extensive review of the factual background of the pending tax refund claims, together with a legal analysis of the issue. The memorandum makes reference to a September 13, 1967, bulletin issued by J. Ed Straughn, the Department's former Executive Director. The bulletin was issued the month following the effective date of the 1967 legislative amendments creating the repossession and bad debt refunds. The memorandum states in part:
The bulletin states that "... when the dealer (original seller) sells a retain title or similar contract to a third party, without recourse, neither the original seller nor the third party is entitled to a refund of any tax remitted to the state on the original transaction." The bulletin went on to state that "The new law, in our opinion, clearly restricts the right to a refund to the dealer who made the original sale when he repossesses the property sold." Until the present issue arose, in the nearly 30 years since this bulletin was issued, only the original selling dealer has qualified for a refund on repossessions and bad debts under the statute.
Under Florida law, this bulletin is a contemporaneous administrative construction of a statute by the official charged with its enforcement and interpretation. As such, although not necessarily controlling, it is entitled to great weight, and a court will not depart from the interpretation except for the most cogent reasons, and unless the interpretation is clearly erroneous. Green v. Stuckey's of Fanning Springs, 99 So.2d 867 (Fla.1958).
The writer of the memorandum included an analysis of the Washington case relied upon by the circuit court in this case, together with an analysis of legal authority favoring the refund. This portion of the memorandum states in pertinent part:
The banks will simply argue that whatever statutory rights a dealer has can be assigned and has been assigned to them under their agreements. Once the assignment occurs, the bank stands in the shoes of the dealer, and functionally becomes the dealer. This argument is appealing and potentially successful. There is little reason for a Florida court not to adopt Washington's analysis other than the fact that Florida's statutes are not identical to Washington's and, despite the legal effect of an assignment, a Florida Court could rule that Florida's legislature did not intend for the refund to apply to assignees.
The writer continued with legal authority in support of denial of the refund. This portion of the memorandum reasons:
As the courts held in Kirk and Victor Chemical Works cited above, without a specific statute providing for refunds on repossessed vehicles, there is no right to a refund. When this refund statute was enacted, it employed redundant language limiting the right to the refund to the original selling dealer and did not contemplate the refund to apply to circumstances where the dealer received full payment for the vehicle through assignment to a third party finance company. This interpretation is supported by long standing contemporaneous administrative construction.

*640 It should be remembered that these repossession and bad debt tax refunds and credits differ from general refunds. Normally refunds and credits apply when no tax was due, or when there was an overpayment. Since the sales tax is a tax on the privilege of doing business, the taxes at issue here were fully due and payable at the moment of the sale on the full amount of the sales price. (citation omitted).
The Bank filed a Motion for Partial Summary Judgment and Supporting Memorandum of Law. The motion asked the court to determine, as a matter of law, that the Bank is entitled to sales tax refunds and credits under section 212.17, because it is an assignee of the rights afforded by the statute. Thereafter, the Department filed its motion for partial summary judgment with supporting affidavit.
On July 22, 1998, the circuit court issued an order granting the Bank's motion for summary judgment. Among other things, the court found that in enacting the section 212.17(2) and (3) refund provisions, the legislature intended "to provide relief to those who unjustly suffer an economic loss when they ultimately fail to collect amounts for which sales tax has already been paid." The court further found that Florida common law favors the assignment of contractual and statutory rights, and where, as here, the statute is silent on the issue of assignability, a court must fill the statutory gaps by relying on Florida common law. Since section 212.17 is silent with respect to assignment of statutory rights, and since Florida does not have an anti-assignment statute, the court concluded the Bank, as assignee, is entitled to the rights of the selling dealer to any tax refunds or credits. The court found agency deference was not required in this case, concluding the Department does not have a longstanding and consistent agency position with regard to assignability of sales tax refunds. Further, the court found the "determination of whether statutory rights are assignable is a legal issue that does not require agency expertise." The concluding portion of the order states:
Section 212.17(2) and (3) create a right to sales tax refunds or credits. Florida law recognizes the assignability of statutory rights unless the statute expressly prohibits assignment or the assignment offends some clearly articulated public policy. Section 212.17 does not prohibit assignment and nothing in the public policy of Florida prohibits assignment of sales tax refunds or credits. Accordingly, [bank] is legally entitled to claim the sales tax refunds or credits under Section 212.17 as assignee of the dealer's rights.
Section 212.081, Florida Statutes provides an expression of legislative intent with respect to the tax levied on the sale of motor vehicles. The provision states in pertinent part:
(2)(a) It is further declared to be the legislative intent that the tax levied by this chapter and imposed by this section is not a tax on motor vehicles as property but a tax on the privilege to sell, ... motor vehicles; ... (Emphasis supplied).
Additional indicia of legislative intent may be found in section 212.06, Florida Statutes, which states in part:
(1)(a) ... The full amount of the tax on a credit sale, installment sale, or sale made on any kind of deferred payment plan shall be due at the moment of the transaction in the same manner as on a cash sale.
. . . .
(3) Every dealer making sales, whether within or outside the state, of tangible personal property for distribution, storage, or use or other consumption, in this state, shall, at the time of making sales, collect the tax imposed by this chapter from the purchaser. (Emphasis supplied).
The statutory provisions directly applicable to the instant controversy are portions *641 of section 212.17, Florida Statutes. Section 212.17 states in pertinent part:
(1)(a) In the event purchases are returned to a dealer by the purchaser or consumer after the tax imposed by this chapter has been collected from or charged to the account of the consumer or user, the dealer shall be entitled to the reimbursement of the amount of tax collected or charged by the dealer, in the manner prescribed by the department. (Emphasis supplied).
. . . .
(2) A dealer who has paid the tax imposed by this chapter on tangible personal property sold under a retained title, conditional sale, or similar contract, or under a contract wherein the dealer retains a security interest in the property pursuant to chapter 679, may take credit or obtain a refund for the tax paid by the dealer on the unpaid balance due him or her when he or she repossesses (with or without judicial process) the property within 12 months following the month in which the property was repossessed. When such repossessed property is resold, the sale is subject in all respects to the tax imposed by this chapter.
(3) A dealer who has paid the tax imposed by this chapter on tangible personal property or services may take a credit or obtain a refund for any tax paid by the dealer on the unpaid balance due on worthless accounts within 12 months following the month in which the bad debt has been charged off for federal income tax purposes. If any accounts so charged off for which a credit or refund has been obtained are thereafter in whole or in part paid to the dealer, the amount so paid shall be included in the first return filed after such collection and the tax paid accordingly.
At common law, there was no right to a refund of taxes from the sovereign. Thus, statutes authorizing tax refunds or exemptions are in derogation of common law; statutes in derogation of the common law must be strictly construed. See Ady v. American Honda Finance Corp., 675 So.2d 577, 581 (Fla.1996), citing Southern Attractions Inc. v. Grau, 93 So.2d 120 (Fla.1956). See also Carlile v. Game and Fresh Water Fish Commission, 354 So.2d 362, 364 (Fla.1977)("Statutes in derogation of the common law ... will not be interpreted to displace the common law further than is clearly necessary."); Wal-Mart Stores, Inc. v. McDonald, 676 So.2d 12, 17 (Fla. 1st DCA 1996)(statutes in derogation of the common law "must be strictly construed in favor of the common law."), approved by Merrill Crossings Associates v. McDonald, 705 So.2d 560 (Fla.1997).
An unambiguous statute is not subject to construction; it must be given its plain and ordinary meaning. See Streeter v. Sullivan, 509 So.2d 268, 271 (Fla.1987); Mayo Clinic Jacksonville v. Department of Professional Regulation, Board of Medicine, 625 So.2d 918, 919 (Fla. 1st DCA 1993). Thus, "[i]nquiry into legislative intent may begin only where the statute is ambiguous on its face." See Streeter, 509 So.2d at 271. See also City of Safety Harbor v. Communications Workers of America, 715 So.2d 265, 267 (Fla. 1st DCA 1998).
The provision here at issue, section 212.17(2) and (3), states clearly and unambiguously that the dealer may take a credit or tax refund on the unpaid balance of the tax after repossession of the property. The legislature presumably is aware that motor vehicle dealers routinely finance motor vehicle sales through banks, and assign a security interest in such vehicle sales to the lending institution. Despite the common knowledge concerning such transactions, the legislature has not enacted a provision authorizing a refund of the uncollected portion of prepaid sales tax to the dealer's assignee.
The principles of statutory construction are entwined with the doctrine which provides that an agency's construction of a statute is entitled to great weight and will *642 not be overturned unless clearly erroneous. See State ex rel. Biscayne Kennel Club v. Board of Business Regulation, 276 So.2d 823, 828 (Fla.1973). See also Save St. Johns River v. St. Johns Water Management District, 623 So.2d 1193, 1203 (Fla. 1st DCA 1993); Mayo Clinic Jacksonville v. Department of Professional Regulation, Board of Medicine, 625 So.2d 918, 919 (Fla. 1st DCA 1993); Department of Natural Resources v. Wingfield Development Co., 581 So.2d 193, 197 (Fla. 1st DCA 1991); Florida Department of Environmental Regulation v. C.P. Developers, Inc., 512 So.2d 258, 261 (Fla. 1st DCA 1987); PW Ventures, Inc. v. Nichols, 533 So.2d 281, 283 (Fla.1988).
The record in this case reflects that in September 1967, one month after the effective date of the legislative amendments creating the subject repossession and bad debt refunds, the Department's Executive Director issued the bulletin previously discussed construing the amendments to mean that "when the dealer (original seller) sells a retain title or similar contract to a third party, without recourse, neither the original seller nor the third party is entitled to a refund of any tax remitted to the state on the original transaction." The record includes various Department memoranda in which the writers recognized the strength of the Bank's claim, particularly in light of the Washington opinion which was relied upon by the circuit court in deciding to grant the refund. Based upon these memoranda, the circuit court concluded the Department does not have a longstanding, unequivocal policy of denying sales refunds to assignees of motor vehicle dealers. In so concluding, it seems the circuit court failed to consider that since its enactment, the Department has administered section 212.17(2) and (3) to permit sales tax refunds only to qualifying dealers.
The dispositive question in this proceeding is whether a motor vehicle dealer's assignment to a financing institution of all the dealer's rights in a motor vehicle retail sales installment contract includes an assignment of the dealer's inchoate right to receive a sales tax refund if the buyer subsequently defaults on the installment contract. "Under Florida law, parties can assign causes of action derived from a contract or a statute." See Forgione v. Dennis Pirtle Agency, Inc., 701 So.2d 557, 559 (Fla.1997). See also National Union Fire Ins. Co. v. Salter, 717 So.2d 141, 142 (Fla. 5th DCA 1998), review denied, 727 So.2d 908 (Fla.1999). An "assignment transfers to the assignee all the interests and rights of the assignor in and to the thing assigned." See State v. Family Bank of Hallandale, 667 So.2d 257, 259 (Fla. 1st DCA 1995); Rose v. Teitler, 736 So.2d 122 (Fla. 4th DCA 1999). Where the statute is silent with respect to the question of the assignee's rights, courts must look to the common law to fill the statutory gap. The general rule is that "[a]n assignee stands in the shoes of his assignor." See Cadle Co. II, Inc. v. Stamm, 633 So.2d 45, 46 (Fla. 1st DCA 1994), quoting FDIC v. Bledsoe, 989 F.2d 805, 809-810 (5th Cir.1993).
We are cognizant of the policy favoring assignability of contract and statutory rights. Nevertheless, we agree with the Department that the dealer cannot assign a right to receive a sales tax refund which the dealer does not possess at the time of the assignment. In the event the buyer defaults after the dealer has assigned all rights under the installment sales contract, the dealer cannot comply with the statutory qualifying conditions for entitlement to a partial sales tax refund, i.e., the dealer does not retain a security interest in the property.
The claims at issue in this case were filed after release of the en banc decision of the Supreme Court of Washington in Puget Sound National Bank v. State of Washington Department of Revenue, 123 Wash.2d 284, 868 P.2d 127 (1994). As here, the Puget Sound case involved bank purchases of installment contracts from automobile dealers. Under the Washington *643 code, at the time of a sale, the dealers must pay the full amount of the sales tax due on the purchase price of an automobile. In the transactions, the bank paid the dealer the balance due on the retail installment contracts, including the uncollected portion of the state sales tax, and the dealers assigned all their rights in the installment contracts to the bank. After assignment, some buyers defaulted on their payments. The bank then repossessed the automobiles and usually sold them at a loss, which loss was written off as a worthless debt for federal tax purposes.
The bank petitioned the Washington Department of Revenue for a refund of the uncollected, but prepaid, portion of the sales tax which had been paid by the dealers. The Washington Department of Revenue denied the petition, and the bank appealed the decision to the Washington trial court. The trial court held that the bank was a "seller" for purposes of RCW 82.08.037 and was entitled to a refund for the sales tax paid on the worthless debts. The Washington Department of Revenue appealed. In its affirmance of the trial court's ruling, the Washington Supreme Court examined general assignment law to determine whether the bank could satisfy the "making sales at retail" requirement set forth in the Washington sales tax refund statute. After finding no statutory or public policy prohibition against assignment of the right to the tax refund, the Washington Supreme Court concluded:
an assignment carries with it the rights and liabilities as identified in the assigned contract, but also all applicable statutory rights and liabilities.
. . . .
Here, the dealers assigned their installment contracts to the Bank. The Bank thereupon stepped into the dealers' shoes and assumed the dealers' status with respect to all the rights and liabilities related to those contracts. Under RCW 82.08.037 the status of the Bank includes the dealers' prior tax attribute of "making sales at retail". Since the assignment of the installment contracts carried with it the "making sales at retail" requirement, the Bank is entitled to a sales tax refund under RCW 82.08.037.
See Puget Sound, 123 Wash.2d at 293, 868 P.2d at 132.
The Puget Sound case is a four-three decision. The dissenting opinion, which we find to be more persuasive, expresses the writer's view that the Washington legislature would have included "seller" in its definition of "assignee" if it had intended to do so. The dissent also objected to the majority decision, because it failed to apply the principle that tax statutes conferring credits, deductions, and refunds are generally construed narrowly. See id. at 133-134.
Since the issue in this case involves a tax refund, general principles of statutory construction, together with the principles governing proper construction of tax statutes, should prevail over general assignment principles. In this vein, it is reasonable to assume the legislature is cognizant of the business practice of dealers with regard to assignment of installment contracts to banks, yet the legislature has not enacted an express authorization for refund of sales tax to the dealers' assignees. Further, the plain language of section 212.17(2) and (3) limits such tax refunds to dealers who retain a security interest in the installment contracts. Other provisions of Chapter 212 expressly state that the tax is due upon sale, because the tax is levied upon the privilege of transacting business.
In the final judgment, the circuit court acknowledged that in the course of assigning the installment contract to a financing institution, the dealer sells or discounts the installment contract. In other words, the bank pays the dealer less than the bank ultimately collects on installment contracts which are paid in full. Therefore, contrary to the trial court's conclusion, it appears *644 the limitation of the tax refunds to dealers who originally sold the taxed property, and who paid the sales tax in full at the time of sale, does not lead to an unreasonable and inequitable result.
In summary, we conclude the circuit court failed to give sufficient consideration to the principle that tax refund statutes are to be strictly construed against the taxpayer, and failed to accord proper deference to the manner in which the Department has applied section 212.17(2) and (3) since its enactment. More significantly, it appears the trial court failed to give effect to the plain, unambiguous language of the statute, which expressly directs that only dealers who retain a security interest in the installment contracts are entitled to a refund of the uncollected portion of sales tax paid at the time of the sale.
Accordingly, we reverse that portion of the final judgment which granted the Bank's motion for summary judgment. In all other respects, the final judgment is affirmed.
KAHN and BENTON, JJ., CONCUR.