ERVIN, J.
Appellant, the Special Disability Trust Fund, challenges a final workers’ compensation order granting a reimbursement claim made by the Dade County School Board and Gallagher Bassett Services, Inc., the employer and carrier (E/C), for payments of permanent total disability (PTD) benefits made to employee David Quinn. We agree with appellant that the claim for reimbursement was untimely and, therefore, reverse.
Quinn, who lost his right eye while serving in the United States Army during World War II, injured his back while at work on May 28, 1981, when he missed a step on a ladder and fell. During the course of his treatment, it was determined he also had a preexisting arthritic condi-tiori in his back. The E/C began paying permanent wage loss (WL) benefits on October 1, 1982, and PTD benefits thereafter on July 26, 1990, retroactive to May 24, 1988. On May 27,1986, during the interim between the payment of WL and PTD benefits, the E/C filed its notice of claim for reimbursement. The only issue before the judge of compensation claims (JCC) in this dispute was the timeliness of the notice, because the parties stipulated that all the other elements of the claim had been satisfied.
Section 440.49(2)(g), Florida Statutes (1979), required a notice of claim reimbursement to be filed within “60 days after the date the first payment of excess compensation for the permanent disability was made.”[1]
In awarding reimbursement, the JCC found that the WL benefits the E/C paid beginning in 1982 did not constitute “excess permanent compensation,”[2] and that the E/C did not pay any excess compensation until PTD benefits were commenced on July 26,1990, thereby making the claim filed in 1986 timely. In reaching this decision, the JCC considered the physician’s 1982 medical reports, which explained that Quinn attained maximum medical improvement on August 17,1982, with a 20 percent *159 permanent impairment of the body, 10 percent of which was attributable to the industrial accident and the remaining 10 percent to the preexisting arthritic condition. The JCC noted that the preexisting eye condition was first linked to the cause of the accident and Quinn’s decreased wage-earning capacity in medical reports released on March 24, 1999, and December 20, 1994. Thus, the JCC found that the WL benefits commenced in 1982 were paid as a result of the compensable back injury and preexisting arthritic condition, and not as a result of the back injury and preexisting eye condition. Under this theory, the JCC concluded that only the PTD benefits were excess compensation, and that the WL benefits were not. We cannot agree.
In reaching his decision, the JCC apparently took into consideration only the type of merger classified as “greater disability,” which occurs when the permanent impairment or wage loss resulting from the subsequent injury is materially and substantially greater than that which would have resulted had the preexisting permanent physical impairment not existed.[3] His order did not address, however, the type of merger specifically applicable to the facts in the present case, that of “but for” merger, meaning that the subsequent accident would not have occurred but for the preexisting permanent physical impairment.[4] See also Armellini Express Lines, Inc. v. Special Disability Trust Fund, 512 So.2d 258, 254-55 (Fla. 1st DCA 1987).
There is no dispute that the E/C sought reimbursement based on the preexisting eye condition, and not the preexisting arthritic condition, and the E/C admits that the eye condition falls under “but for” merger. Because the record clearly shows that Quinn would not have suffered his compensable accident “but for” the preexisting eye condition, a “but for” merger existed upon the occurrence of the accident. All the elements necessary for the reimbursement claim were then present when WL benefits were paid in 1982. Consequently, the 1986 claim for reimbursement was untimely, because it was filed more than 60 days after excess permanent compensation was first paid.
REVERSED.
WOLF and WEBSTER, JJ., CONCUR.

. The parties make no contention that a later, amended version of the statute allowing two years for filing a claim is applicable. See § 440.49(7)(a), Fla. Stat. (1997). In any event, under either enactment, the claim, for the reasons later stated, was untimely.

. “Excess permanent compensation” is “compensation for permanent impairment, wage-loss benefits, or permanent total disability or death benefits for which the employer or carrier is otherwise entitled to reimbursement from the Special Disability Trust Fund.” § 440.49(2)(b)3, Fla. Stat. (1979).

. See § 440.49(2)(b)2 b, Fla. Stat. (1979).

. See § 440.49(2)(b)2 a, Fla. Stat. (1979).